**Samuel COLEMAN, Plaintiff,**

v.

**Gordon FRIERSON, et al., Defendants.**

**No. 82 C 4460.**

United States District Court,
N.D. Illinois, E.D.

April 30, 1985.

Abraham Goldman, Steven Ackerman, Chicago, Ill., for plaintiff.

Aldus Mitchell, John K. Kneafsey, Hal Ross Kessler, Chicago, Ill., for defendants.

## MEMORANDUM OPINION
## AND ORDER

SHADUR, District Judge.

Samuel Coleman ("Coleman") prevailed against each of the remaining three defendants in this 42 U.S.C. § 1983 ("Section 1983") action, brought to challenge Coleman's firing as Special Investigator for the Village of Robbins ("Robbins") and his later arrest on charges of impersonating a police officer. After entry of a default judgment as to liability against defendants, a jury trial was held solely to determine Coleman's damages. Verdicts were returned in the following amounts:

1. against former Robbins Mayor Marion Smith ("Smith"), $250,000 in compensatory damages for physical, mental and emotional injury and $100,000 in punitive damages;

2. against former Robbins Police Chief Gordon Frierson ("Frierson"), $125,000 in compensatory damages for physical, mental and emotional injury and $100,000 in punitive damages;

3. against Robbins, $34,000 in lost wages and $14,842 in interest; and

4. against Frierson and Smith jointly and severally, $3,000 in compensatory damages for legal and medical expenses.[1]

---

1. This Court has also issued an opinion today denying several post-judgment motions by de- fendants. 607 F.Supp. 1566.

Coleman has now petitioned for an award of attorneys' fees under 42 U.S.C. § 1988 ("Section 1988"). His petition is granted, subject to the limitations stated in this opinion.

### Reasonable Fee Award

■ Parties are "prevailing" for Section 1988 purposes "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978). Because Coleman certainly qualifies as a prevailing party in those terms, it remains only to calculate a "reasonable" fee in the circumstances of the case. For that purpose this Court must look first to "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939, an inquiry that entails consideration of such factors as the novelty and difficulty of the questions involved, the amount involved and the results obtained, the customary fee and the experience and ability of the attorney. *Id.* at 430 n. 4, 103 S.Ct. at 1938 n. 4, citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974).

Affidavits filed by Coleman's attorneys, Abraham Goldman ("Goldman") and Steven Ackerman ("Ackerman"), set out in scrupulous detail the time spent on this lawsuit from March 1982 through November 1984. They have taken special care to deduct (1) time for duplicate effort and (2) time that has already been compensated by sanctions under Fed.R.Civ.P. ("Rule") 37. After careful review of those affidavits, this Court finds Goldman's 303.25 hours and Ackerman's 537.75 hours over a two-year period represent a reasonable investment of time—especially given the nature of the case and the substantial problems created by defendants' and their counsel's conduct of the litigation.[2]

Coleman had a difficult factual case to prove. Because his claim turned in part on Smith's and Frierson's intent—why they acted as they did—Coleman's lawyers were confronted by the always troublesome task of building on inferences. Similarly, every effort to pierce the veil of governmental action is likely to be hard, and that was doubly complicated here because the events underlying Coleman's claim occurred in the context of apparent conflict between the Robbins Board of Trustees and various Robbins officials over the locus of municipal authority and power. Goldman and Ackerman also had the job of dealing with complicated questions about the allocation of municipal power under state law. And all their work called for piecing the facts together out of a welter of deposition testimony. As already said, there can be no quarrel with the reasonableness of the time spent.

■ As for the applicable hourly rate, Goldman seeks an award at $150 per hour, while Ackerman has asked $100. Fair market value is the standard for appraising those requests, *Strama v. Peterson*, 561 F.Supp. 997, 999 (N.D.Ill.1983), and that standard is plainly met here:

1. Goldman has had extensive experience trying Section 1983 cases. In fact he was trial counsel for plaintiffs in *Winfield v. Murcia*, 78 C 1792 (N.D.Ill. Oct. 30, 1981), the first case prosecuted to a verdict against the City of Chicago under the doctrine of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 692–93, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978). Goldman has submitted recent statements issued to other civil rights clients reflecting the $150 hourly rate.

2. Ackerman, like Goldman, has had substantial federal court trial experience in civil rights cases. For example, he was co-trial counsel with Goldman in *Winfield*. As of March 1983 (in connection with a then-pending motion for as-

---

**2.** For an account of only part of those problems, see this Court's opinion granting the default

judgment as to liability, 101 F.R.D. 541, 541–42 (N.D.Ill.1984).

sessment of fees as Rule 37 sanction) this Court calculated the value of Ackerman's services at $85 an hour. Increasing that rate to $100 is reasonable in terms of today's market rates.

■ Robbins urges not *all* the time expended by Goldman and Ackerman should be billed at their current hourly rates. On that score the case law in this Circuit is clearly otherwise. *Gautreaux v. Chicago Housing Authority*, 690 F.2d 601, 612–13 (7th Cir.1982), specifically holds awards at current hourly rates rather than historic rates are appropriate (and have been widely approved elsewhere). And *Chapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 764 & n. 6 (7th Cir.1982) points out that treatment is justified in part to account for inflationary losses due to delay in payment.

Frierson complains in another respect, objecting to application of an across-the-board hourly rate without regard to the nature of the services performed. That contention too was recently rejected by our Court of Appeals, this time in *Berberena v. Coler*, 753 F.2d 629, 632–33 (7th Cir.1985).

On a straight hours-times-rates basis, then, the total comes to $99,262.50, of which $45,487.50 is allocable to Goldman's work and $53,775.00 to Ackerman's. It remains to consider whether any of the other relevant factors points to a different result, either up or down.

### Multiplier

Coleman has asked for application of a 1.5 multiplier to each lawyer's time charges. He argues Goldman and Ackerman achieved excellent results on a novel and difficult theory of recovery, exhibiting tenaciousness in the face of considerable recalcitrance on the part of defendants and their counsel. Supreme Court decisions have given somewhat mixed signals in that area. *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940 said:

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhancement award may be justified.

On the other hand *Blum v. Stenson*, —— U.S. ——, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1984) (footnote omitted), while reaffirming *Hensley*, said:

Because acknowledgement of the "results obtained" generally will be subsumed within other factors used to calculate a reasonable fee, it normally should not provide an independent basis for increasing the fee award.

*Blum, id.* at 1550 placed the burden on the party seeking the award to produce evidence that enhancement is necessary to make the award fully compensatory.

In *Hensley-Blum* terms, Coleman is not entitled to an enhanced award. He has come forward with no specific evidence as to the need for enhancement to make the fee award fair. Indeed, payment in full on a straight hourly basis encompasses a substantial amount of time expended in researching substantive issues foreclosed by the default judgment.[3]

■ Thus the nearly six-figure award calculated earlier not only meshes with the multiple factors identified in *Hensley* and other cases, but also provides a proper balance between competing factors. It neither prejudices Goldman and Ackerman because a default judgment was entered nor penalizes defendants because of their careless prosecution of the case. This Court accordingly denies Coleman's request for application of a multiplier.

### Fee Allowable Against Specific Defendants

■ Coleman has also urged joint and several imposition of the fee award against all defendants. In *Strama*, 561 F.Supp. at 1000–01 this Court addressed the possible allocation of fee awards in the context of a

---

**3.** This is not of course to say Coleman should be *penalized* for his adversaries' having defaulted. It is nonetheless true that defendants' default as to liability meant the work of Coleman's lawyers on many of the difficult issues was never put to the ultimate test.

substantial disparity in the damages awards against multiple defendants:

> Ordinarily tortfeasors are jointly and severally liable, with the plaintiff having the free choice of whom to pursue (subject to possible contribution among the tortfeasors at the behest of the defendant required to pay in the first instance). But the situation here seems to call for different treatment:
>
> 1. Where each defendant is liable for a discrete amount of damages (instead of joint and several liability for a single figure), joint and several liability for the entire fee award appears inappropriate. *See Dean v. Gladney,* 621 F.2d 1331, 1340 (5th Cir.1980), *cert. denied,* 450 U.S. 983 [101 S.Ct. 1521, 67 L.Ed.2d 819] ... (1981).
>
> 2. Where the disparity between the liability amounts is as great as here, the added principle that "usually attorneys' fees should not be granted 'greatly in excess of a client's recovery' " (*Strama [v. Peterson],* 689 F.2d [661,] 665 [ (7th Cir.1982) ] ) reinforces that conclusion.

Of the jury's $627,142 award to Coleman, $351,650 was assessed against Smith, $226,650 against Frierson and $48,842 against Robbins.[4] Calculated as percentages of the total verdict, Smith is liable for 56.07%, Frierson 36.14% and Robbins 7.79%. Were this Court to apply only the concept discussed in *Strama,* the fee award would be apportioned among defendants in the ratio of those percentages.

Even on that assumption, though, matters would be rendered more complicated by the fact that after the trial defendants parted company, using different counsel. Coleman's counsel have meticulously broken out the post-trial time separately chargeable to individual defendants on issues relating to collection (R.Mem. [7] ):

| | |
|---|---|
| Smith | $3,537.50 |
| Frierson | 862.50 |
| Robbins | 775.00 |

If the remaining $94,087.50 were allocated on the percentages stated earlier ($52,-756.58 to Smith, $34,003.36 to Frierson and $7,327.56 to Robbins), the aggregate allocation using the *Strama*-suggested approach would come to this:

| | |
|---|---|
| Smith | $56,294.08 |
| Frierson | 34,865.86 |
| Robbins | 8,102.56 |

There would however be an important element of unfairness in imposing only several (and not joint) liability on the individual defendants in that manner. It would place on Coleman all the risk of insolvency of, or uncollectibility against, any one defendant.[5]

One final and important factor enters the equation at this point. Robbins' own counsel has acknowledged the propriety of assessing the entire fees award against the Village (Mem. 6):

> We do not agree that any fee award should be made but in the event fees are awarded, the cases relied on by plaintiff clearly show that the award should properly be against the Village of Robbins.

That makes it unanimous (albeit for radically different reasons) among the parties: Coleman argues all three defendants should be jointly and severally liable (so the full amount could be collected from Robbins), while each of Smith and Frierson seeks to shunt sole responsibility to Robbins. In the face of such unanimity, this Court accepts the invitation to impose potentially full liability on Robbins, which leaves open the question of any joint liability of the individual defendants.

Two reasons compel an affirmative answer to that question. For one thing, the

---

**4.** This is not of course literally true, for it ascribes half of the $3,300 joint and several amount to Smith and half to Frierson. Because the $3,300 amount is small in relation to the total, and because a proportionate allocation of fees would be impossible without a specific allo-cation of the damages, the slight oversimplification involved must be lived with.

**5.** Contrast the usual joint and several liability situation, where *all* such risks are borne by the tortfeasors—the defendants—rather than by the innocent plaintiff.

vast majority of the total damages (over 92%) was assessed against the individuals, and on grounds not attributable to Robbins at all. And for another, the post-judgment proceedings have demonstrated Robbins may not be good even for the damages against it, let alone the fees award (nearly double those damages). Accordingly this Court is called on to determine the proper extent of any assessment against Smith and Frierson—a kind of variant on the considerations identified in *Strama*.

This is an issue this Court has not seen confronted in any case, and it has sought to shape an equitable approach to the problem—avoiding the extremes of wholly joint liability on the one hand and of mere several liability (unfair to Coleman if collection proves difficult) on the other. Consequently this Court assesses each individual defendant's *maximum* liability for fees at 150% of his straight pro rata share:

| | | |
|---|---|---|
| Smith | $84,441.12 | (rather than $56,294.08) |
| Frierson | 52,298.79 | (rather than 34,865.86) |
| Robbins | 99,262.50 | (the full amount, as already stated) |

Coleman has the right to pursue any defendant up to that maximum amount—subject of course to the limitation that his total recovery of fees shall not exceed the aggregate award of $99,262.50.[6]

### Liability of Defense Counsel for Fee Award

Coleman finally urges defense counsel Aldus Mitchell ("Mitchell") should be held jointly liable for the $94,087.50 element of the fee award incurred before defendants split off from each other. Coleman argues Mitchell vexatiously and unreasonably increased the cost of the litigation by his careless and negligent handling of the case, bringing into play 28 U.S.C. § 1927 ("Section 1927"). If that section does not control, Coleman contends Mitchell at least violated Rules 11, 16 and 37, for which

violation liability for the other side's fees is a suitable sanction.

Of course Rules 11, 16 and 37 were never intended to have the broad reach Coleman now claims for them. They certainly provide no basis for holding Mitchell liable for substantially the entire fee award. By the same token Section 1927 creates liability only for *excess* costs, expenses and attorney's fees triggered by an attorney's vexatious behavior, not an award for the total expenses of litigation. *United States v. Blodgett*, 709 F.2d 608, 610–11 (9th Cir.1983).

Coleman has made no attempt to identify portions of the award directly attributable to Mitchell's misconduct, nor has he identified any other legal basis for holding Mitchell liable for the entire fee award. Absent any rational predicate for a partial attribution of the award against Mitchell, Coleman's petition is denied in that respect.

### Conclusion

This Court awards the sum of $99,262.50 to Coleman as and for attorneys' fees and expenses. Coleman's right to collection of part of that amount from any one defendant shall not exceed the following respective sums:

| | |
|---|---|
| Smith | $84,441.12 |
| Frierson | 52,298.79 |
| Robbins | 99,262.50 |

Accordingly judgment is entered against defendants in those respective sums (subject of course to the limitation that Coleman may not recover more than $99,262.50 in total).

---

**6.** Any defendant paying more than his or its proportionate share may seek contribution from the others.