Michael SHAKMAN and Paul M. Lurie, et al., Plaintiffs,

v.

DEMOCRATIC ORGANIZATION OF COOK COUNTY, et al., Defendants.

No. 69 C 2145.

United States District Court, N.D. Illinois, E.D.

May 14, 1986.

C. Richard Johnson, Steven R. Gilford, Janice S. Loughlin, Isham, Lincoln & Beale, Chicago, Ill., appeared on behalf of plaintiffs.

Judson H. Miner, Corp. Counsel, City of Chicago by Jonathan P. Siner, Senior Atty.-Supervisor, Chicago, Ill., appeared on behalf of defendants City and Mayor of City of Chicago.

Richard M. Daley, State's Atty. of Cook County by Greg A. Kinczewski, Chief Atty., Randolph T. Kemmer, Asst. State's Atty., Chicago, Ill., appeared on behalf of County defendants.

## ORDER

Before the Court is the plaintiffs' motion for summary judgment with respect to costs and partial summary judgment with respect to attorneys' fees. For the reasons stated herein, plaintiffs' motion with respect to costs is granted and their motion with respect to attorneys' fees is granted in part and denied in part.

## I. FACTS

This is a class action brought under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and 42 U.S.C. §§ 1983 and 1985, challenging the patronage practices of the regular Democratic and Republican Party organizations in most of the Northern District of Illinois. Plaintiffs are independent candidates, voters and taxpayers. The defendants include various government officers at the state and local levels, local government entities, and local organizations and officials of the two major political parties. Plaintiffs' principal theory is that the use of state and local government patronage power to coerce political support for the regular Party organizations and their candidates violates independents' rights to fair and equal participation in the electoral process.

This case has a long history in this court. A 1969 dismissal of this action by Judge Marovitz was reversed by the Seventh Circuit Court of Appeals in 1970. Following that reversal, plaintiffs entered into a consent decree with many of the Democratic and Republican defendants. In 1979, the Court found that all defendants engaged in a conspiracy to deprive plaintiffs of their constitutional and civil rights to a free political and electoral process. *Shakman v. Democratic Organization of Cook County*, 481 F.Supp. 1315, 1342 (N.D.Ill.1979).

Plaintiffs now seek to recover their attorneys' fees and costs on Counts I–VI, pursu-

ant to 42 U.S.C. § 1988, as well as under the common fund or benefit theory of awarding attorneys' fees and costs.[1] In their motion, plaintiffs seek partial summary judgment regarding their entitlement to attorneys' fees and the reasonableness of their attorneys' hours and hourly rates. In addition, plaintiffs seek attorneys' fees and costs incurred by plaintiff Michael Shakman as an attorney. Finally, plaintiffs argue that any fees and costs awarded should be imposed jointly and severally against all defendants.

Defendant City of Chicago challenges the reasonableness of plaintiffs' attorneys' fees based on the use of current hourly rates in addition to plaintiffs' requested multiplier. In addition, the City argues that attorneys' fees should not be imposed jointly and severally, but should be apportioned among the various defendants. The City also objects to the hours billed in connection with an *amicus* brief filed in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), as well as double-billing relating to conversations between various attorneys. Finally, the City objects to any fees claimed by plaintiff Michael Shakman.

The County defendants object generally to the use of partial summary judgment on the reasonableness of plaintiffs' attorneys' fees and costs. County defendants also object to joint and several imposition of fees and costs and argue for apportionment of fees and costs on the basis of the number of employees which each defendant has.

## II. DISCUSSION

■ The Civil Rights Attorneys Fees Awards Act of 1976 provides that:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title, ... the court,

---

1. The Petition and Bill of Costs seek attorneys' fees and costs from various defendant public employers against whom judgments have been entered under Counts I–VI of plaintiffs' amended complaint. The defendants named in the Petition and Bill of Costs are the City of Chicago

and its Mayor, the Chicago Park District, the Cook County Sheriff, the Cook County Treasurer, and Clerk of the Circuit Court of Cook County, the Cook County Assessor, the President of the Cook County Board, the Cook County Board and the Forest Preserve District of Cook County.

in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988. It is clear that the plaintiffs prevailed in Counts I–VI by virtue of the Court's 1979 order and the 1972 consent decree. An award of attorneys' fees to the prevailing party is legally required unless extraordinary circumstances intervene. *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983), *citing* S.Rep. No. 94–1011 at 4 (1976); *Henry v. Webermeier,* 738 F.2d 188, 192 (7th Cir.1984). Defendants have offered and the Court finds no extraordinary circumstances which would intervene to prevent an award of reasonable attorneys' fees under Section 1988. Therefore, the issue here becomes what a reasonable award of attorneys' fees is in this case.

## A. Determination of Reasonable Attorneys' Fees

■■■ *Blum v. Stetson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), and *Hensley v. Eckerhart, supra,* set forth the method for calculating attorneys' fees under Section 1988. The number of hours reasonably expended on the case multiplied by a reasonable hourly rate establishes the appropriate base amount for determining attorneys' fees under Section 1988. *Id.* 104 S.Ct. at 1543–44, *citing Hensley v. Eckerhart,* 461 U.S. at 433–34, 103 S.Ct. at 1939–40. Reasonable fees under Section 1988 are to be calculated according to the prevailing market rates in the relevant community. *Blum v. Stetson,* 104 S.Ct. at 1547. While the base amount provides a useful starting point, other factors, including the results obtained, may lead to upward or downward adjustment of the fee. *Blum,* 104 S.Ct. at 1548–50; *Hensley,* 461 U.S. at 434–37, 103 S.Ct. at 1939–41. The approach developed in *Blum* and *Hensley* has been followed by the Seventh Circuit Court of Appeals. *Lynch v. City of Milwaukee,* 747 F.2d 423, 426 (7th Cir.1984); *Henry v. Webermeier,* 738 F.2d 188, 193 (7th Cir.1984).

## 1. Total Number of Hours: Reduction For Inadequate Documentation

■■■ In *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.,* 776 F.2d 646 (7th Cir.1985), the Seventh Circuit directed the district court, under the "lodestar" approach, to disallow hours devoted to unrelated, unsuccessful claims. *Id.* at 651. Also excluded are hours for which the prevailing party provides inadequate documentation. *Id.* The Seventh Circuit rejected the argument that a district court must identify allegedly vague entries and limit the reduction to the time covered by them. *Id.* at 657. Instead, the district court may simply reduce the proposed fee award by a reasonable amount without performing an item-by-item accounting. *Id.*

■ In the present case, plaintiffs have submitted extensive documentation in the form of affidavits which detail the number of hours spent by their counsel on Counts I–VI. C. Richard Johnson Supp.Aff., Tab 4, Plaintiffs' Exhibits In Support of Motion for Partial Summary Judgment, (Ex. A); Henry C. Krasnow Aff., Ex. A; Robert Plotkin Supp.Aff., Ex. A; Michael L. Shakman Aff. & Supp.Aff., Ex. A; Roger R. Fross Aff., Ex. A. These affidavits show the hours spent, when they were rendered and a brief description of the matters worked on. In most cases, the affidavits are based on contemporaneous time records. In the instances where contemporaneous time records were not available, plaintiffs' affidavits provide, by their own representation, conservative estimates of work done. Plotkin Aff. ¶ 5; Krasnow Aff. ¶ 5; Shakman Aff. ¶¶ 8 & 9; Fross Aff. ¶ 6; Johnson Amended Aff. ¶ 7. However, such representations of conservative estimates are no substitute for well documented time records. Therefore, the Court has conducted an item-by-item accounting, surpassing the required scrutiny in *Ohio-Sealy,* of plaintiffs' attorneys' time records.

■ In *Ohio-Sealy,* the Seventh Circuit upheld a fifteen percent reduction of initially allowed hours by the district court. In so doing, the Seventh Circuit concluded that "the vagueness of the descriptions, the

inconsistencies between the petitions, and the plaintiff's failure to provide detailed analysis provided adequate grounds for reducing the award." 776 F.2d at 658. The time records for attorneys Johnson, Fross, Krasnow and Shakman, including their associates, include detailed descriptions of the work performed, the day on which it was performed, and the number of hours expended. An example of the thorough documentation in these attorneys' time records is contained in Appendix B, which disallows hours of an unrelated nature. Therefore, the Court finds that these attorneys' time records are well documented and should not be reduced for inadequate or vague documentation.

■ Unfortunately for attorney Plotkin, his time records contain general and vague descriptions of the work performed, as well as monthly summaries of work performed and hours expended. Appendix A sets forth Plotkin's hours disallowed for inadequate documentation and hours not normally billed to a client. *Ohio-Sealy*, 776 F.2d at 651. Plotkin's time records include entries such as "Miscellaneous matters," "meetings; telecons; investigation of facts," and "various pending matters." These entries are plainly inadequate documentation and therefore, the Court disallows 1,055.1 hours of Plotkin's 1,788.5 hours claimed.

2. *Total Number of Hours: Reduction for Time Spent On Unrelated Claims*

■ Defendant City of Chicago argues that time spent on *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), including the filing of two amicus briefs, should be disallowed as unrelated to this case. Plaintiffs counter that the issues in *Elrod v. Burns* were relevant to the outcome in *Shakman* because *Elrod v. Burns* held that there was no compelling governmental interest in the patronage hiring system at issue in this case.

Time spent on an amicus brief may be included in an award of reasonable attorneys' fees if the amicus brief materially advanced the prevailing party's case, *Ari-*zona v. Maricopa County Medical Society*, 578 F.Supp. 1262, 1268 (D.Ariz.1984), or if it directly advances the merits of the litigation. *Kemp v. Williams*, 26 E.P.D., ¶ 31,961 (D.D.C.1981). While the two cases cited above present slightly different standards regarding an award of fees for an amicus brief, the short answer in this case is that the Court found that *Elrod v. Burns* was not necessarily dispositive of the issues in *Shakman* because *Elrod* and *Shakman* involve the vindication of different rights. *Shakman*, 481 F.Supp. at 1327–29.

In *Elrod v. Burns*, the Supreme Court held that patronage workers could not be fired because of their political affiliation. This Court in *Shakman* held that it could not "simply apply *Elrod* and hold that the defendants' conduct is illegal, for these plaintiffs do not have standing to attack the constitutional validity of defendants' infringement of job applicants' rights." (Footnote omitted.) *Id.* at 1327–28. This Court concluded that:

the plaintiffs are not proper parties for a challenge of patronage hiring and promotion practices as they affect employees and applicants. Instead, the defendants' conduct must be analyzed solely under the Seventh Circuit's decision in *Shakman* and other applicable court decisions interpreting the rights of candidates and voters.

*Id.* at 1329. Therefore, in light of its prior conclusion that *Shakman* involves candidates' and voters' rights, as opposed to employees' rights in *Elrod*, the Court holds that time spent on *Elrod* matters, including the two amicus briefs, is unrelated to the issues involved in *Shakman*, did not materially advance those issues, and therefore will be disallowed. The total number of hours disallowed for work done on *Elrod v. Burns* matters is 164.5 hours, as set forth in Appendix B.

3. *Total Number of Hours: Reduction for Michael L. Shakman's Participation as a Witness*

Defendant City of Chicago objects to an award of attorneys' fees to Michael L.

Shakman, who is both a party and an attorney in this case. The City contends that it is impossible, from the time records, to separate the role of Shakman as a plaintiff from his functions as an attorney. Plaintiffs counter that Shakman's uncontradicted affidavit establishes that the time records which he submitted related only to legal work and not to his activity as a plaintiff. Plaintiffs also argue that Shakman's time spent counseling present and former employees are compensable as his attempt to secure compliance with the 1972 consent decree.

In *Rybicki v. State Bd. of Elections of State of Ill.*, 584 F.Supp. 849 (N.D.Ill.1984), a three-judge panel held that two attorneys, who were also named as plaintiffs, were entitled to their own attorneys' fees and costs under Section 1988. *Id.* at 860. In so doing, the panel followed the holding in *Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980). In *Ellis*, the Ninth Circuit Court of Appeals permitted a lawyer, named as a defendant in a frivolous lawsuit, to recover attorneys' fees from the plaintiff under Section 1988. *Id.* at 230. The court reasoned that a lawyer appearing pro se, unlike a layperson, actually performs legal services and actually suffers pecuniary loss due to the time lost from his practice. *Id.* at 231. Furthermore, the court noted that the difficulty in measuring the value of a lay litigant's services is not present when a party-attorney seeks compensation. *Id.*

■ In the present case, since Shakman is an attorney, there is no difficulty in measuring the value of his services. *Rybicki*, 584 F.Supp. at 860. Second, the danger of a groundless and frivolous suit proceeding without the assistance of skilled counsel is not present here. *Id.* The Court finds that Shakman represented the *Shakman* plaintiffs professionally and sought experienced co-counsel early in the litigation. *Id.* Third, it is evident that Shakman suffered actual pecuniary loss due to his involvement in this lawsuit. *Id.* In sum, no justification exists for denying Shakman attorneys' fees merely because he was named as a plaintiff in this lawsuit.

■ Defendant City also argues that awarding Shakman attorneys' fees in light of his dual role as attorney and witness would be unjust under these circumstances. The ethical prohibition against a lawyer acting both as an advocate and a witness in a single proceeding is well known. As explained by the Seventh Circuit Court of Appeals:

> The [Disciplinary Rules contained in the ABA Code of Professional Responsibility] prohibit an attorney from accepting employment in contemplated or pending litigation when it is obvious that he will be called as a witness. If the need for his testimony becomes apparent after the attorney has undertaken employment in the case, he must withdraw from the conduct of the trial.

*United States v. Johnston*, 690 F.2d 638, 642 (7th Cir.1982) (en banc).

In the present case, Shakman could not reasonably have been expected to anticipate that his testimony would be necessary at trial. However, when it became known that his testimony would be required, he had an ethical obligation to withdraw as counsel for the *Shakman* plaintiffs under Disciplinary Rule 5–101(B), *United States v. Johnston*, 690 F.2d at 642, unless one of the two exceptions to that rule apply. Given Shakman's extensive knowledge of and involvement in this case, his refusal to testify would have resulted in a "substantial hardship" to the *Shakman* plaintiffs. *Id.* at 642 n. 9. Therefore, the Court finds that an exception to Rule 5–101(B) applies and Shakman did not have to withdraw as an attorney even though he submitted affidavit testimony.

However, the Court believes that it would be inappropriate to award Shakman attorneys' fees for time spent preparing his own affidavits and testimony. Therefore, Appendix C sets forth the hours disallowed for time spent by Shakman as a witness. The total number of hours disallowed in Appendix C is 20.1.

The Court also disallows time spent by Shakman counseling present and former

employees about possible violations of the 1972 consent decree. Plaintiffs' other attorneys could have conducted this counseling after referral from Shakman. Given the sensitive nature of Shakman's dual role as litigant and advocate, the Court disallows these counseling hours in order to protect against the danger of a litigant creating further litigation through his role as an advocate. According to Shakman's affidavit, the total number of hours allocated to this counseling is 27.6.

### 4. *Total Number of Hours: No Reduction For Alleged Double-Billing*

■■■ Defendant City alleges that plaintiffs double-billed telephone conferences between their attorneys. Plaintiffs counter that a case of such magnitude and complexity requires frequent communication between attorneys for coordination and strategy purposes.

In *Berberena v. Coler,* 753 F.2d 629 (7th Cir.1985), the Seventh Circuit found no double-billing and noted that "this was a difficult case with significant social effects and that the participation of the two attorneys in question in the strategy conferences and negotiations 'may indeed have been crucial to subsequent participation in the case.'" *Id.* at 633. The court also noted the small number of hours allegedly double-billed in comparison to the total number of hours claimed.

In the present case, there are significant social effects based on a novel legal theory. In addition, the size and complexity of the case certainly would require conferences between plaintiffs' attorneys for coordination and strategy. After reviewing the time records of plaintiffs' attorneys, the Court finds no duplication of effort or improper utilization of time. Finally, the Court's finding is buoyed by the fact that only 94.50 hours are allegedly double-billed, out of more than 5,500 hours compensated in this case.

### 5. *Reasonable Hourly Rates*

Plaintiffs suggest the use of current hourly billing rates for their attorneys. They argue that the current hourly billing rates are necessary to compensate their attorneys for inflation and the time-value of money. Defendant City argues that *Ohio-Sealy* requires the use of historical rates as opposed to current hourly rates. After the base amount is calculated on the basis of historic hourly rates, the City argues that an adjustment for inflation may be appropriate.

In *Ohio-Sealy,* the Seventh Circuit held that the application of a weighted average historical rate, was permissible in order to calculate the number of hours disallowed. 776 F.2d at 654. The court also upheld the use of individualized market rates for each attorney. *Id.* Finally, the court mentioned that the "district court's use of weighted average historical rates probably did not provide the *true* value of the disallowed hours, ..." *Id.* (emphasis in original).

While the court in *Ohio-Sealy* approved the use of a weighted average historical rate for calculating disallowed hours, it also approved the practice of using current hourly rates as an adjustment for inflation and the time-value of money. The Seventh Circuit held that:

> if a court decides to use current hourly rates to compensate the attorneys for inflation and the time value of money, the lodestar reflects this adjustment and no further adjustment is appropriate. *See, e.g., Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760, 764 (7th Cir.1982); *Copeland [v. Marshall],* 641 F.2d [880] at 893 n. 23 [(D.C.Cir.1980)]. The district court can make an adjustment in the process of computing a lodestar or after computing a lodestar, so long as the court provides an explanation for each adjustment and does not adjust for the same factor twice.... The district court is in the best position to determine what fees are reasonable, and the court does not abuse its discretion by modifying the lodestar or other fee setting approach into a method more convenient on the facts of a particular case.

776 F.2d at 651 n. 3.

The Seventh Circuit in *Ohio-Sealy* suggested that, in certain cases, the use of a

more convenient approach to adjust for inflation, *i.e.* the use of current hourly rates, is within the district court's discretion. In at least one case, a district court has opted for this more convenient approach. *Va. Academy of Clinical Psychologists v. Blue Shield*, 543 F.Supp. 126 (E.D.Va.1982). In *Va. Academy*, the district court concluded that the use of current hourly rates was preferable to adjusting historical rates for inflation by using a multiplier. The district court reasoned:

> The use of a multiplier, unless in some way indexed to the inflation rate, requires the court to engage in the sort of standardless discretion which should be avoided. Moreover, the latter method is merely an indirect means by which a court increases the historical rate to what is, in effect, the current rate. On the other hand, if the "lodestar" itself is based on *present* hourly rates, rather than historical rates, the harm resulting from delay in payment may be largely reduced or eliminated.... This Court, given the choice and absent contraindications, favors the direct approach of determining the current rates for a particular attorney. (Citations omitted.)

543 F.Supp. at 144 (emphasis in original).

██ Given the discretion conferred on a district court in *Ohio-Sealy*, the Court will follow the approach suggested in *Ohio-Sealy* and *Va. Academy*, *i.e.* to use current hourly rates as an adjustment of the lodestar for inflation and the time-value of money. In the present case, plaintiffs' attorneys have not been reimbursed since the start of this case in 1969. Given the inflation which occurred from 1969 to 1985 and the lost time-value of money, the Court believes that the current hourly rates of plaintiffs' attorneys should be used as an adjustment for inflation and the time-value of money.

██ Defendants do not dispute that the rates presented by plaintiffs' attorneys are their actual current rates. However, the Court will make one reduction in attorney Plotkin's current hourly rate. In his affidavit and in Original Exhibit A submitted with plaintiffs' proposed findings of facts, filed on October 28, 1985, Plotkin's hourly rate was $180 per hour. In the Revised Exhibit A, filed on February 21, 1986, Plotkin's hourly rate is $205 per hour. None of plaintiffs' other attorneys, with the exception of a $5 per hour increase for Fross from $155 to $160 per hour, have increased their hourly rates in Revised Exhibit A. Therefore, the Court will increase Plotkin's hourly rate only to $185 per hour from $180 per hour, as listed in Original Exhibit A.

### B. *Joint & Several Liability for Attorneys' Fees and Costs*

Plaintiffs argue that they are entitled to the imposition of joint and several liability against all defendants, consenting and nonconsenting, for attorneys' fees and costs. Plaintiffs concede that, with respect to each defendant which has consented to a final decree on hiring, joint liability for fees with respect to seeking relief on the merits should relate only to work undertaken for entry of the relevant consent decree. In other words, plaintiffs seek joint and several liability against nonconsenting defendants for fees and costs from 1969 to the present. Plaintiffs seek joint and several liability against consenting defendants up until the time each consenting defendant entered into a consent decree on hiring.

Defendant City of Chicago and the County defendants urge that no joint and several liability be imposed. Defendant City contends that joint and several liability for fees and costs would be unfair because it relieves plaintiffs of their burden to show that certain hours were related to certain defendants. The County defendants argue that fees and costs should be apportioned among all defendants by the number of employees each defendant controls.

██ In the Seventh Circuit Court of Appeals, joint and several liability for damages in a Section 1983 action may be based on one of two grounds—conspiracy or indivisible injury. *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1387 (7th Cir.1984).

Both grounds may well be present in the same case. *Id.* The court in *McKinnon* suggested that joint and several liability would be imposed on all defendants: "if they had conspired against him or if it just was not possible to say what portion of his injuries would have been avoided if a particular defendant had not participated in the wrongful conduct." *Id.*

While there are few cases which provide detailed analysis of joint and several liability in the area of attorneys' fees and costs, the cases appear to follow the standards for imposing joint and several liability for damages. *See Dean v. Gladney*, 621 F.2d 1331, 1340 (5th Cir.1980), *cert. denied*, 450 U.S. 983, 101 S.Ct. 1521, 67 L.Ed.2d 819 (1981); *Coleman v. Frierson*, 607 F.Supp. 1578, 1582 (N.D.Ill.1985); *Strama v. Peterson*, 561 F.Supp. 997, 1000 (N.D.Ill.1983). In *Dean, Coleman,* and *Strama,* the courts held that, where each defendant is liable for a discrete amount of damages (instead of joint and several liability for a single figure), joint and several liability for the entire fee award appears inappropriate. *Dean,* 621 F.2d at 1340; *Coleman,* 607 F.Supp. at 1582; *Strama,* 561 F.Supp. at 1000. Therefore, the above three cases rest their rejection of joint and several liability for fees and costs on the indivisible injury theory.

*Dean, Coleman* and *Strama* are inapposite where, as here, the court has already found a conspiracy to violate the plaintiffs' rights under Section 1983. In its 1979 order, the Court found that:

> The stipulated admissions of the defendants, together with the other evidentiary matter before the court, establishes that there was a conspiracy among the defendants to deprive the plaintiffs of [their] rights....

*Shakman,* 481 F.Supp. at 1342. The Court elaborated on its above finding:

> The stipulations and admissions of the other consenting and nonconsenting defendants are generally similar. They demonstrate that all defendants understand the nature of and participated in this "practice," which can be character-

ized in technical language as a "common plan."

481 F.Supp. at 1343. Finally, the Court held that: "in analyzing the constitutionality of the challenged practices, each defendant will be accountable for the hiring practices of all the defendants currently before the court." 481 F.Supp. at 1344.

In light of the above finding that a conspiracy among all defendants existed to deprive plaintiffs of their constitutional rights, the Court holds that the imposition of joint and several liability against all defendants for fees and costs is appropriate. The Court finds support for its holding in the approach applied in *Riddell v. National Democratic Party,* 545 F.Supp. 252 (S.D.Miss.1982), *aff'd in part and remanded in part on other grounds,* 712 F.2d 165 (5th Cir.1983). In *Riddell,* the district court held the two defendant political parties jointly and severally liable for attorneys' fees and costs. *Riddell,* 545 F.Supp. at 263.

Given the factual similarities between *Riddell* and *Shakman,* the Court will follow the *Riddell* approach, with one exception. In the interest of fairness, the Court will incorporate into the joint and several liability plaintiffs' concession regarding the liability limits for consenting defendants. Therefore, the nonconsenting defendants are jointly and severally liable for plaintiffs' attorneys' fees and costs from 1969 to the present. However, the consenting defendants are jointly and severally liable for plaintiffs' attorneys' fees and costs from 1969 up until each defendant entered into a consent decree. Based upon the new base amount or lodestar found herein, the plaintiffs are directed to file with the Court a revised Exhibit A which sets forth the amounts not chargeable to the consenting defendants by virtue of this Court's ruling.

Finally, the Court agrees with the County defendants that, after the imposition of joint and several liability for fees and costs, the fees and costs should be apportioned among all defendants by the number of employees each defendant controls.

### C. *Calculation of Base Amount*

Plaintiffs seek summary judgment only on their entitlement to attorneys' fees and costs, the reasonableness of their hourly rates and the ultimate base amount or lodestar. Plaintiffs do not seek at this time summary judgment regarding their entitlement to or the use of a multiplier to adjust the base amount for contingency, risk, novelty or good results.

In calculating the base amount, the Court has reduced the total amount of plaintiffs' attorneys' time by 1,267.3 hours. Appendix D shows the total number of hours disallowed by attorney. Appendix E shows the final calculation of the base amount after adjusting for the hours disallowed to each attorney. For the reasons stated above, the Court has applied the current hourly rates of plaintiffs' attorneys. The base amount is calculated by multiplying the total number of an attorney's hours by his current billing rate, and then adding up all of the base amounts for the individual attorneys. The final base amount calculation yields attorneys' fees in the amount of $883,504.75. Therefore, to the extent that the plaintiffs received most, but not all, of their fees requested in the base amount, plaintiffs' motion for summary judgment as to the base amount of attorneys' fees is granted in part and denied in part.

The Court grants plaintiffs' uncontested motion for summary judgment regarding costs in the amount of $18,139.82.

### III. CONCLUSION

For the reasons stated above, plaintiffs' motion for summary judgment as to costs is granted in the amount of $18,139.82. Plaintiffs' motion for partial summary judgment regarding their attorneys' fees under Section 1988 is granted in the amount of $883,504.75. The Court also grants plaintiffs' motion for partial summary judgment regarding the imposition of joint and several liability against all defendants, subject to the apportionment and liability limits discussed, for plaintiffs' attorneys' fees and costs. The Court reserves ruling on what multiplier, if any, should be applied as an adjustment to the above base amount.

IT IS SO ORDERED.

#### APPENDIX A

Hours Disallowed For Robert Plotkin

| Date | Activity | Hours |
|---|---|---|
| Oct. 1969 | Legal research; prep. of complaint; preparation of papers re motion for preliminary injunction; meetings and telecons re same. | 155.6 |
| Nov. | Same as for October plus work on preparation of briefs and papers on appeal. | 118.9 |
| Oct. 1970 | Meetings, telecons and legal research re Court of Appeals' decision; evidence-gathering. | 30.8 |
| Feb. 1971 | Legal research; meetings; telecons; investigation of facts. | 55.0 |
| March | Attended pretrial conference; preparation for same; legal research; work re petition for certiorari; meetings; telecons. | 38.0 |
| April | Meetings; telecons; investigation of facts. | 7.3 |
| May | Meetings; telecons; investigation of facts. | 20.0 |
| June | Legal research, meetings; telecons; investigation of facts. | 74.0 |
| July | Attended court hearing; preparation for same; legal research; meetings; telecons; investigation of facts. | 41.5 |
| Aug. | Negotiations and other work re settlement. | 10.0 |
| Sept. | Negotiations and other work re settlement; misc. tasks. | 25.3 |
| Oct. | Negotiations and other work re settlement. | 61.3 |
| Jan. 1972 | Work re settlement. | 40.0 |
|  | Time added (as per Affidavit) to cover unrecorded time prior to February of 1972. | 75.0 |
| Feb. 14–16 | Court appearance; meetings with counsel; many telecons; preparation of documents, including preliminary injunction papers. | 15.2 |

APPENDIX A—Continued

| Date | Activity | Hours |
|---|---|---|
| Feb. 22–29 | Many telecons; meetings; legal research; etc.—all re settlement. | 18.0 |
| Mar. 7–30 | Many telecons plaintiffs' counsel and defendants' counsel; meetings; work on papers and class hearing; etc. | 19.0 |
| July 28– Aug. 15 | Several telecons plaintiffs' counsel re court's 7/28/72 decision; other work re same. | 14.6 |
| Aug. 16–17 | Preparation for court appearance on 8/18 (including preparation of papers and meetings with plaintiffs and plaintiffs' counsel). | 8.6 |
| Aug. 19–26 | Legal research and other work re recusal motion. Several telecons and reviewed affidavits and other papers re Auld and Cohen | 8.1 |
| Aug. 31 | Prepare affidavits in support of motion to recuse; several telecons. | 9.8 |
| Sept. 1 | Preparation of affidavits in support of motion to recuse. | 8.1 |
| Sept. 10 | Several telecons re court hearing tomorrow; preparation for same. | 5.9 |
| Sept. 11 | Court appearance; work relating thereto afterwards. | 4.4 |
| Sept. 13 | Telecons plaintiffs and plaintiffs' counsel, plus other work—all reviewing pending matters. | 1.2 |
| Sept. 14 | Meeting with plaintiffs' counsel re pending matters and other work relating thereto. | 2.1 |
| Sept. 19 | Review of various pending matters; telecons re reassignment of case. | 4.8 |
| Sept. 21 | Telecons plaintiffs and plaintiffs' counsel; work on various pending matters. | 3.5 |
| Sept. 26 | Preparation of various motions, synopsis of status of case and related papers—all for upcoming court hearing. 2 telecons defendants' counsel re same. | 6.0 |
| Sept. 29 | Telecons plaintiffs and plaintiffs' counsel re | |

| Date | Activity | Hours |
|---|---|---|
| | motions against Democratic defendants; other work re same. | 4.5 |
| Oct. 24–29 | Telecons plaintiffs and plaintiffs' counsel re discovery; other work re same. | 8.9 |
| Nov. 1–3 | Several telecons re plaintiffs' motions re violations of Consent Judgment; other work re same. | 6.2 |
| Nov. 8 | 2 telecons plaintiffs' counsel; telecon plaintiff; telecon defendants' counsel and others; work re violations of Consent Judgment. | 10.5 |
| Nov. 9 | General strategy meeting with plaintiffs and plaintiffs' counsel; several telecons re pending motions. | 2.2 |
| Nov. 15 | Several telecons; reviewed documents—all re pending motions and petitions for enforcement of Consent Judgment; Court appearance re same. | 4.1 |
| Nov. 16–17 | Several telecons re pending motions. | .8 |
| Dec. 11–31 | Discussion with plaintiffs' counsel; etc. | 2.0 |
| Feb. 6– Mar. 18, 1973 | Work re Danaher matter; court appearances re same. | 25.7 |
| Mar. 19 | Telecon plaintiffs' counsel re firing. | .3 |
| Mar. 20–23 | Miscellaneous matters. | 3.3 |
| Mar. 23–31 | Work re various matters. | 3.5 |
| Apr. 1–4 | Several telecons plaintiffs' counsel re strategy for case; work on various pending matters. | 2.6 |
| Apr. 5–30 | Miscellaneous matters. | 2.7 |
| May 26–31 | Miscellaneous matters. | 3.2 |
| Jan. 24, 1975 | Review of facts with witness re said matter. | 4.0 |
| Feb. 15, 1975– May 12, 1982 | Review of various documents; discussions with plaintiffs and plaintiffs' counsel; etc. (See par. 5 of Affidavit of R. Plotkin.) | 75.0 |
| Aug. 26, 1982 | Reviewed documents re evidentiary hearing on 10/15. | 2.1 |
| Sept. 8 | Prepared letter to defendants' counsel re witness for 10/15 hearing; reviewed file re said | |

APPENDIX A—Continued

| Date | Activity | Hours |
|---|---|---|
|  | hearing; legal research re said hearing. | 2.6 |
| Sept. 25 | Telecon plaintiffs' counsel re defendants' motion for continuance of 10/15 hearings; straightened out file. | 1.3 |
| Dec. 3 | Telecon plaintiffs' counsel re hearing today; tell plaintiff; preparation of petition for fees. | 2.8 |
| Mar. 2, 1983 | Meeting with plaintiffs' counsel re future plans. | 1.0 |
| Mar. 3 | Legal research. | 1.8 |
| Mar. 4 | Telecon plaintiffs' counsel re possible settlement. | .3 |
| Mar. 14 | Telecon plaintiff. | .2 |
| May 16 | 2 telecons plaintiffs' counsel re negotiations with city; went to City Hall for meeting with city (which did not take place). | 1.5 |
|  | Total | 1,055.1 |
|  | Total hours claimed by Plotkin | 1,788.5 |
|  | Total hours disallowed | 1,055.1 |
|  | Total hours allowed for Plotkin | 733.4 |

APPENDIX B

Time Disallowed For Work on
Elrod v. Burns Matters,
Including Amicus Brief

C. Richard Johnson:

| 3/28/73 | Shanks matter—court appearance and phone calls; discussion with Mr. Tucker re Elrod case. | 2.75 |
|---|---|---|
| 8/7/73 | General review; discussion with Mr. Tucker. | .25 |
| 8/8/73 | Review of Hatch Act case; work with Mr. Tucker's summer student. | 1.25 |
| 9/1/73 | Preparation of first draft of brief for amicus in *Elrod v. Burns*. | 2.75 |
| 10/22/73 | Preparing summary of enforcement proceedings for Mr. Tucker. | .50 |
| 10/24/73 | Work on letter re *Burns* argument to Mr. Tucker. | .25 |

C. Richard Johnson:—Continued

| 10/6/75 | Work on *Burns* amicus brief. | 1.50 |
|---|---|---|
| 10/7/75 | Draft of research points for amicus brief in *Burns v. Elrod*; discussion with Mr. Tucker. | 1.50 |
| 10/8/75 | Work on research points. | 1.00 |
| 11/7/75 | Review of Supreme Court case. | 1.00 |
| 11/18/75 | Research re Supreme Court brief. | 1.00 |
| 11/19/75 | Work on Supreme Court brief. | 1.00 |
| 11/25/75 | Conversations with United States Attorney; preparation of letter. | 1.00 |
| 11/26/75 | Letter to Solicitor General. | 2.00 |
| 12/1/75 | Work on amicus brief. | .50 |
| 12/5/75 | General review. | .50 |
| 12/10/75 | Work on amicus brief. | .50 |
| 12/11/75 | Work on amicus brief. | 1.00 |
| 12/12/75 | Review of matters on amicus brief. | 1.00 |
| 12/16/75 | Historical review. | .50 |
| 1/2/76 | Work on amicus brief; preparation of Third Ward oral argument. | 9.50 |
| 1/5/76 | Oral argument on Third Ward matter; work on motion for leave to file amicus brief; research re constitutional convention. | 3.50 |
| 1/6/76 | Research re amicus brief in *Burns*; meeting with Messrs. Daley and Fitzpatrick on interrogatories. | 4.00 |
| 1/7/76 | Work on amicus brief. | 8.25 |
| 1/8/76 | Work on amicus brief. | 5.25 |
| 1/9/76 | Work on interrogatories; research re amicus brief. | 1.75 |
| 1/13/76 | Work on amicus brief. | 3.25 |
| 1/14/76 | Work on amicus brief. | 2.50 |
| 1/15/76 | Work on amicus brief. | 7.50 |
| 1/16/76 | Work on amicus brief. | 6.50 |
| 1/19/76 | Work on amicus brief. | 8.75 |
| 1/20/76 | Work on amicus brief. | 7.00 |

APPENDIX B—Continued

C. Richard Johnson:—Continued

| | | |
|---|---|---|
| 1/21/76 | Work on amicus brief. | 5.50 |
| 1/22/76 | Work on amicus brief. | 2.00 |
| 1/23/76 | Review of filing of amicus brief. | 1.00 |
| 1/28/76 | Review of Respondent's brief in *Elrod*. | 1.25 |
| 2/18/75 | Work on motion for leave to participate in oral argument. | .25 |
| 2/27/76 | Status call; review of memoranda on Walker motion; review of status with Mr. Krasnow; review of amicus brief. | 1.50 |
| 3/10/76 | Work on requests to admit; work on motion on amici matter. | 1.50 |
| 3/11/76 | Meeting with Messrs. Fitzpatrick and Daley; phone calls re Cardilli; motion for leave to participate in oral argument before Supreme Court in *Elrod*. | 2.50 |
| 3/19/76 | Discussion with Ms. Hill on *Elrod* argument; work on motion. | .50 |
| 3/25/76 | Review of printing problem re *Burns*; discussion with Mr. Polikoff re hiring. | .50 |
| 3/26/76 | Review of possibility of employee suit; work on motion to Supreme Court in *Elrod* for leave to participate in oral argument. | 2.00 |
| 4/14/76 | Work on Elrod oral argument; review of requests and interrogatories. | 2.50 |
| 4/25/76 | Review suggested points on oral argument in *Elrod*; research re Cardilli attorneys' fees. | 2.00 |
| 4/16/76 | Arrangements to Washington, D.C. for Supreme Court argument. | .50 |
| 4/19/76 | Attendance at oral argument before Supreme Court in *Elrod*; review of cases involved in argument. | 7.25 |
| 6/28/76 | Review of *Burns* decision; phone calls. | 1.25 |

C. Richard Johnson:—Continued

| | | |
|---|---|---|
| 6/29/76 | Review of opinion in *Elrod*. | 1.50 |
| | TOTAL | 123.00 |

Roger R. Fross:

| | | |
|---|---|---|
| 9/5/73 | Confer with J. Lockhart re firing and re amicus brief. | 1.2 |
| 9/10/73 | Review of amicus and legal research re same. | 1.9 |
| 9/13/73 | Review of amicus and legal research re same. | 1.8 |
| 9/19/73 | Review of amicus. | 1.0 |
| 10/23/73 | *Burns* argument. | 1.7 |
| 10/29/73 | Drafting interrogatories and amicus and reply. | 2.3 |
| 10/29/75 | Conference re proceeding on *Elrod* amicus. | .9 |
| 1/19/76 | Review amicus in *Burns* and Park District brief. | 1.8 |
| 1/20/76 | Conference with C. Richard Johnson re amicus brief and attention to employment statistics. | .9 |
| 2/9/76 | Reading *Elrod* brief. | 2.1 |
| 4/19/76 | Prepare for and attend *Elrod* argument in U.S. Supreme Court. | 7.2 |
| | TOTAL | 22.8 |

Michael L. Shakman:

| | | |
|---|---|---|
| 9/6/73 | Work on *Burns v. Elrod amicus* brief. | 2.1 |
| 9/18/73 | Conference with Mr. Plotkin about *Burns v. Elrod amicus* brief. | .8 |
| 9/19/73 | Work on *Burns v. Elrod amicus* brief. | 3.0 |
| 9/20/73 | Work on *Burns v. Elrod amicus* brief and conference with Mr. Plotkin about it. | .9 |
| 3/3/75 | Review of Frost papers and petition for rehearing in *Burns*. | .2 |
| 1/19/76 | Review *amicus* brief in *Burns v. Elrod*. | .9 |
| 1/21/76 | Telephone with Mr. Johnson, Mr. Tucker. | .3 |
| 2/17/76 | Telephone with Mr. Johnson re Supreme Court argument in *Burns v. Elrod*. | .1 |

APPENDIX B—Continued

Michael L. Shakman:—Continued

| Date | Description | Hours |
|---|---|---|
| 3/25/76 | Telephone call and correspondence re *Burns v. Elrod.* | .1 |
| 4/19/76 | Attend Supreme Court argument in *Burns v. Elrod* and conferences with Mr. Johnson, Mr. Tucker. | 7.0 |
| 6/28/76 | Review of decision in *Burns v. Elrod* and telephone calls re | 2.5 |
| 6/29/76 | Review in *Burns v. Elrod.* | .8 |
| | TOTAL | 18.7 |
| | Total Hours Disallowed For Work on *Elrod v. Burns* Matters, Including Amicus Brief. | 164.5 |

| Date | Description | Hours |
|---|---|---|
| | contempt proceeding; draft affidavit. | 1.5 |
| 7/28/77 | Review affidavit in connection with motion for summary judgment and telephone call with Mr. Johnson. | 1.9 |
| 8/4/77 | Same. | .6 |
| 8/8/77 | Same. | 1.0 |
| 3/22/82 | Prepare possible questions for hearing testimony. | 1.0 |
| 6/17/83 | Preparation for hearing. | 6.5 |
| 6/18/83 | Preparation for hearing. | 1.5 |
| 5/1/84 | Telephone call with Mr. Fross concerning affidavits on City's emergency appeal. | .4 |
| 5/2/84 | Review draft affidavit in connection with City's emergency appeal; meeting with Mr. Fross, Mr. Graham, Mr. Lapesa concerning City hiring plan. | 1.9 |
| | TOTAL | 20.1 |

APPENDIX C

Time Disallowed For Michael L. Shakman's Participation As A Witness

| Date | Description | Hours |
|---|---|---|
| 2/4/71 | Work on review of affidavit. | 2.8 |
| 5/15/74 | Preparation of affidavit. | 1.0 |
| 12/23/74 | Conference with Congressman Metcalfe, Mr. Johnson, and Mr. Krasnow concerning Third Ward | |

APPENDIX D

Total Hours Disallowed By Attorney

| Attorney | Hours |
|---|---|
| Robert Plotkin | 1,055.1 |
| C. Richard Johnson | 123.0 |
| Michael L. Shakman | 66.4 |
| Roger R. Fross | 22.8 |

APPENDIX E

Calculation of Base Amount

| Attorney | Total Hours Allowed on Counts I–VI | Current Hourly Rate | Total Base Amount |
|---|---|---|---|
| Mr. Johnson | 2,824.25 | $165.00 | $466,001.25 |
| —Mr. Gilford | 12.5 | 105.00 | 1,312.50 |
| —Ms. Majeske | 30.0 | 80.00 | 2,400.00 |
| Mr. Fross | 1,199.0 | $160.00 | $191,840.00 |
| Mr. Plotkin | 733.4 | $185.00 | $150,347.00 |
| Mr. Shakman | 253.0 | $155.00 | $ 39,215.00 |
| —Mr. Dellsy | 337.6 | 50.00 | 16,880.00 |
| —Mr. Beem | 23.6 | 105.00 | 2,478.00 |
| —Paralegals | 19.3 | 45.00 | 868.50 |
| Mr. Krasnow | 97.3 | $125.00 | $ 12,162.50 |
| TOTAL BASE AMOUNT | | | $883,504.75 |