634 F.Supp. 895 (1986)
Michael SHAKMAN and Paul M. Lurie, et al., Plaintiffs,
v.
DEMOCRATIC ORGANIZATION OF COOK COUNTY, et al., Defendants.
No. 69 C 2145.
United States District Court, N.D. Illinois, E.D.
May 14, 1986.
*896 *897 C. Richard Johnson, Steven R. Gilford, Janice S. Loughlin, Isham, Lincoln & Beale, Chicago, Ill., appeared on behalf of plaintiffs.
Judson H. Miner, Corp. Counsel, City of Chicago by Jonathan P. Siner, Senior Atty.-Supervisor, Chicago, Ill., appeared on behalf of defendants City and Mayor of City of Chicago.
Richard M. Daley, State's Atty. of Cook County by Greg A. Kinczewski, Chief Atty., Randolph T. Kemmer, Asst. State's Atty., Chicago, Ill., appeared on behalf of County defendants.

*898 ORDER
Before the Court is the plaintiffs' motion for summary judgment with respect to costs and partial summary judgment with respect to attorneys' fees. For the reasons stated herein, plaintiffs' motion with respect to costs is granted and their motion with respect to attorneys' fees is granted in part and denied in part.

I. FACTS
This is a class action brought under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and 42 U.S.C. §§ 1983 and 1985, challenging the patronage practices of the regular Democratic and Republican Party organizations in most of the Northern District of Illinois. Plaintiffs are independent candidates, voters and taxpayers. The defendants include various government officers at the state and local levels, local government entities, and local organizations and officials of the two major political parties. Plaintiffs' principal theory is that the use of state and local government patronage power to coerce political support for the regular Party organizations and their candidates violates independents' rights to fair and equal participation in the electoral process.
This case has a long history in this court. A 1969 dismissal of this action by Judge Marovitz was reversed by the Seventh Circuit Court of Appeals in 1970. Following that reversal, plaintiffs entered into a consent decree with many of the Democratic and Republican defendants. In 1979, the Court found that all defendants engaged in a conspiracy to deprive plaintiffs of their constitutional and civil rights to a free political and electoral process. Shakman v. Democratic Organization of Cook County, 481 F.Supp. 1315, 1342 (N.D.Ill.1979).
Plaintiffs now seek to recover their attorneys' fees and costs on Counts I-VI, pursuant to 42 U.S.C. § 1988, as well as under the common fund or benefit theory of awarding attorneys' fees and costs.[1] In their motion, plaintiffs seek partial summary judgment regarding their entitlement to attorneys' fees and the reasonableness of their attorneys' hours and hourly rates. In addition, plaintiffs seek attorneys' fees and costs incurred by plaintiff Michael Shakman as an attorney. Finally, plaintiffs argue that any fees and costs awarded should be imposed jointly and severally against all defendants.
Defendant City of Chicago challenges the reasonableness of plaintiffs' attorneys' fees based on the use of current hourly rates in addition to plaintiffs' requested multiplier. In addition, the City argues that attorneys' fees should not be imposed jointly and severally, but should be apportioned among the various defendants. The City also objects to the hours billed in connection with an amicus brief filed in Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), as well as double-billing relating to conversations between various attorneys. Finally, the City objects to any fees claimed by plaintiff Michael Shakman.
The County defendants object generally to the use of partial summary judgment on the reasonableness of plaintiffs' attorneys' fees and costs. County defendants also object to joint and several imposition of fees and costs and argue for apportionment of fees and costs on the basis of the number of employees which each defendant has.

II. DISCUSSION
The Civil Rights Attorneys Fees Awards Act of 1976 provides that:
In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title, ... the court, *899 in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
42 U.S.C. § 1988. It is clear that the plaintiffs prevailed in Counts I-VI by virtue of the Court's 1979 order and the 1972 consent decree. An award of attorneys' fees to the prevailing party is legally required unless extraordinary circumstances intervene. Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983), citing S.Rep. No. 94-1011 at 4 (1976); Henry v. Webermeier, 738 F.2d 188, 192 (7th Cir.1984). Defendants have offered and the Court finds no extraordinary circumstances which would intervene to prevent an award of reasonable attorneys' fees under Section 1988. Therefore, the issue here becomes what a reasonable award of attorneys' fees is in this case.

A. Determination of Reasonable Attorneys' Fees

Blum v. Stetson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), and Hensley v. Eckerhart, supra, set forth the method for calculating attorneys' fees under Section 1988. The number of hours reasonably expended on the case multiplied by a reasonable hourly rate establishes the appropriate base amount for determining attorneys' fees under Section 1988. Id. 104 S.Ct. at 1543-44, citing Hensley v. Eckerhart, 461 U.S. at 433-34, 103 S.Ct. at 1939-40. Reasonable fees under Section 1988 are to be calculated according to the prevailing market rates in the relevant community. Blum v. Stetson, 104 S.Ct. at 1547. While the base amount provides a useful starting point, other factors, including the results obtained, may lead to upward or downward adjustment of the fee. Blum, 104 S.Ct. at 1548-50; Hensley, 461 U.S. at 434-37, 103 S.Ct. at 1939-41. The approach developed in Blum and Hensley has been followed by the Seventh Circuit Court of Appeals. Lynch v. City of Milwaukee, 747 F.2d 423, 426 (7th Cir.1984); Henry v. Webermeier, 738 F.2d 188, 193 (7th Cir.1984).

1. Total Number of Hours: Reduction For Inadequate Documentation

In Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc., 776 F.2d 646 (7th Cir.1985), the Seventh Circuit directed the district court, under the "lodestar" approach, to disallow hours devoted to unrelated, unsuccessful claims. Id. at 651. Also excluded are hours for which the prevailing party provides inadequate documentation. Id. The Seventh Circuit rejected the argument that a district court must identify allegedly vague entries and limit the reduction to the time covered by them. Id. at 657. Instead, the district court may simply reduce the proposed fee award by a reasonable amount without performing an item-by-item accounting. Id.
In the present case, plaintiffs have submitted extensive documentation in the form of affidavits which detail the number of hours spent by their counsel on Counts I-VI. C. Richard Johnson Supp.Aff., Tab 4, Plaintiffs' Exhibits In Support of Motion for Partial Summary Judgment, (Ex. A); Henry C. Krasnow Aff., Ex. A; Robert Plotkin Supp.Aff., Ex. A; Michael L. Shakman Aff. & Supp.Aff., Ex. A; Roger R. Fross Aff., Ex. A. These affidavits show the hours spent, when they were rendered and a brief description of the matters worked on. In most cases, the affidavits are based on contemporaneous time records. In the instances where contemporaneous time records were not available, plaintiffs' affidavits provide, by their own representation, conservative estimates of work done. Plotkin Aff. ¶ 5; Krasnow Aff. ¶ 5; Shakman Aff. ¶¶ 8 & 9; Fross Aff. ¶ 6; Johnson Amended Aff. ¶ 7. However, such representations of conservative estimates are no substitute for well documented time records. Therefore, the Court has conducted an item-by-item accounting, surpassing the required scrutiny in Ohio-Sealy, of plaintiffs' attorneys' time records.
In Ohio-Sealy, the Seventh Circuit upheld a fifteen percent reduction of initially allowed hours by the district court. In so doing, the Seventh Circuit concluded that "the vagueness of the descriptions, the *900 inconsistencies between the petitions, and the plaintiff's failure to provide detailed analysis provided adequate grounds for reducing the award." 776 F.2d at 658. The time records for attorneys Johnson, Fross, Krasnow and Shakman, including their associates, include detailed descriptions of the work performed, the day on which it was performed, and the number of hours expended. An example of the thorough documentation in these attorneys' time records is contained in Appendix B, which disallows hours of an unrelated nature. Therefore, the Court finds that these attorneys' time records are well documented and should not be reduced for inadequate or vague documentation.
Unfortunately for attorney Plotkin, his time records contain general and vague descriptions of the work performed, as well as monthly summaries of work performed and hours expended. Appendix A sets forth Plotkin's hours disallowed for inadequate documentation and hours not normally billed to a client. Ohio-Sealy, 776 F.2d at 651. Plotkin's time records include entries such as "Miscellaneous matters," "meetings; telecons; investigation of facts," and "various pending matters." These entries are plainly inadequate documentation and therefore, the Court disallows 1,055.1 hours of Plotkin's 1,788.5 hours claimed.

2. Total Number of Hours: Reduction for Time Spent On Unrelated Claims

Defendant City of Chicago argues that time spent on Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), including the filing of two amicus briefs, should be disallowed as unrelated to this case. Plaintiffs counter that the issues in Elrod v. Burns were relevant to the outcome in Shakman because Elrod v. Burns held that there was no compelling governmental interest in the patronage hiring system at issue in this case.
Time spent on an amicus brief may be included in an award of reasonable attorneys' fees if the amicus brief materially advanced the prevailing party's case, Arizona v. Maricopa County Medical Society, 578 F.Supp. 1262, 1268 (D.Ariz.1984), or if it directly advances the merits of the litigation. Kemp v. Williams, 26 E.P.D., ¶ 31,961 (D.D.C.1981). While the two cases cited above present slightly different standards regarding an award of fees for an amicus brief, the short answer in this case is that the Court found that Elrod v. Burns was not necessarily dispositive of the issues in Shakman because Elrod and Shakman involve the vindication of different rights. Shakman, 481 F.Supp. at 1327-29.
In Elrod v. Burns, the Supreme Court held that patronage workers could not be fired because of their political affiliation. This Court in Shakman held that it could not "simply apply Elrod and hold that the defendants' conduct is illegal, for these plaintiffs do not have standing to attack the constitutional validity of defendants' infringement of job applicants' rights." (Footnote omitted.) Id. at 1327-28. This Court concluded that:
the plaintiffs are not proper parties for a challenge of patronage hiring and promotion practices as they affect employees and applicants. Instead, the defendants' conduct must be analyzed solely under the Seventh Circuit's decision in Shakman and other applicable court decisions interpreting the rights of candidates and voters.
Id. at 1329. Therefore, in light of its prior conclusion that Shakman involves candidates' and voters' rights, as opposed to employees' rights in Elrod, the Court holds that time spent on Elrod matters, including the two amicus briefs, is unrelated to the issues involved in Shakman, did not materially advance those issues, and therefore will be disallowed. The total number of hours disallowed for work done on Elrod v. Burns matters is 164.5 hours, as set forth in Appendix B.

3. Total Number of Hours: Reduction for Michael L. Shakman's Participation as a Witness

Defendant City of Chicago objects to an award of attorneys' fees to Michael L. *901 Shakman, who is both a party and an attorney in this case. The City contends that it is impossible, from the time records, to separate the role of Shakman as a plaintiff from his functions as an attorney. Plaintiffs counter that Shakman's uncontradicted affidavit establishes that the time records which he submitted related only to legal work and not to his activity as a plaintiff. Plaintiffs also argue that Shakman's time spent counseling present and former employees are compensable as his attempt to secure compliance with the 1972 consent decree.
In Rybicki v. State Bd. of Elections of State of Ill., 584 F.Supp. 849 (N.D.Ill.1984), a three-judge panel held that two attorneys, who were also named as plaintiffs, were entitled to their own attorneys' fees and costs under Section 1988. Id. at 860. In so doing, the panel followed the holding in Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). In Ellis, the Ninth Circuit Court of Appeals permitted a lawyer, named as a defendant in a frivolous lawsuit, to recover attorneys' fees from the plaintiff under Section 1988. Id. at 230. The court reasoned that a lawyer appearing pro se, unlike a layperson, actually performs legal services and actually suffers pecuniary loss due to the time lost from his practice. Id. at 231. Furthermore, the court noted that the difficulty in measuring the value of a lay litigant's services is not present when a party-attorney seeks compensation. Id.
In the present case, since Shakman is an attorney, there is no difficulty in measuring the value of his services. Rybicki, 584 F.Supp. at 860. Second, the danger of a groundless and frivolous suit proceeding without the assistance of skilled counsel is not present here. Id. The Court finds that Shakman represented the Shakman plaintiffs professionally and sought experienced co-counsel early in the litigation. Id. Third, it is evident that Shakman suffered actual pecuniary loss due to his involvement in this lawsuit. Id. In sum, no justification exists for denying Shakman attorneys' fees merely because he was named as a plaintiff in this lawsuit.
Defendant City also argues that awarding Shakman attorneys' fees in light of his dual role as attorney and witness would be unjust under these circumstances. The ethical prohibition against a lawyer acting both as an advocate and a witness in a single proceeding is well known. As explained by the Seventh Circuit Court of Appeals:
The [Disciplinary Rules contained in the ABA Code of Professional Responsibility] prohibit an attorney from accepting employment in contemplated or pending litigation when it is obvious that he will be called as a witness. If the need for his testimony becomes apparent after the attorney has undertaken employment in the case, he must withdraw from the conduct of the trial.
United States v. Johnston, 690 F.2d 638, 642 (7th Cir.1982) (en banc).
In the present case, Shakman could not reasonably have been expected to anticipate that his testimony would be necessary at trial. However, when it became known that his testimony would be required, he had an ethical obligation to withdraw as counsel for the Shakman plaintiffs under Disciplinary Rule 5-101(B), United States v. Johnston, 690 F.2d at 642, unless one of the two exceptions to that rule apply. Given Shakman's extensive knowledge of and involvement in this case, his refusal to testify would have resulted in a "substantial hardship" to the Shakman plaintiffs. Id. at 642 n. 9. Therefore, the Court finds that an exception to Rule 5-101(B) applies and Shakman did not have to withdraw as an attorney even though he submitted affidavit testimony.
However, the Court believes that it would be inappropriate to award Shakman attorneys' fees for time spent preparing his own affidavits and testimony. Therefore, Appendix C sets forth the hours disallowed for time spent by Shakman as a witness. The total number of hours disallowed in Appendix C is 20.1.
The Court also disallows time spent by Shakman counseling present and former *902 employees about possible violations of the 1972 consent decree. Plaintiffs' other attorneys could have conducted this counseling after referral from Shakman. Given the sensitive nature of Shakman's dual role as litigant and advocate, the Court disallows these counseling hours in order to protect against the danger of a litigant creating further litigation through his role as an advocate. According to Shakman's affidavit, the total number of hours allocated to this counseling is 27.6.

4. Total Number of Hours: No Reduction For Alleged Double-Billing

Defendant City alleges that plaintiffs double-billed telephone conferences between their attorneys. Plaintiffs counter that a case of such magnitude and complexity requires frequent communication between attorneys for coordination and strategy purposes.
In Berberena v. Coler, 753 F.2d 629 (7th Cir.1985), the Seventh Circuit found no double-billing and noted that "this was a difficult case with significant social effects and that the participation of the two attorneys in question in the strategy conferences and negotiations `may indeed have been crucial to subsequent participation in the case.'" Id. at 633. The court also noted the small number of hours allegedly double-billed in comparison to the total number of hours claimed.
In the present case, there are significant social effects based on a novel legal theory. In addition, the size and complexity of the case certainly would require conferences between plaintiffs' attorneys for coordination and strategy. After reviewing the time records of plaintiffs' attorneys, the Court finds no duplication of effort or improper utilization of time. Finally, the Court's finding is buoyed by the fact that only 94.50 hours are allegedly double-billed, out of more than 5,500 hours compensated in this case.

5. Reasonable Hourly Rates

Plaintiffs suggest the use of current hourly billing rates for their attorneys. They argue that the current hourly billing rates are necessary to compensate their attorneys for inflation and the time-value of money. Defendant City argues that Ohio-Sealy requires the use of historical rates as opposed to current hourly rates. After the base amount is calculated on the basis of historic hourly rates, the City argues that an adjustment for inflation may be appropriate.
In Ohio-Sealy, the Seventh Circuit held that the application of a weighted average historical rate, was permissible in order to calculate the number of hours disallowed. 776 F.2d at 654. The court also upheld the use of individualized market rates for each attorney. Id. Finally, the court mentioned that the "district court's use of weighted average historical rates probably did not provide the true value of the disallowed hours, ..." Id. (emphasis in original).
While the court in Ohio-Sealy approved the use of a weighted average historical rate for calculating disallowed hours, it also approved the practice of using current hourly rates as an adjustment for inflation and the time-value of money. The Seventh Circuit held that:
if a court decides to use current hourly rates to compensate the attorneys for inflation and the time value of money, the lodestar reflects this adjustment and no further adjustment is appropriate. See, e.g., Chrapliwy v. Uniroyal, Inc., 670 F.2d 760, 764 (7th Cir.1982); Copeland [v. Marshall], 641 F.2d [880] at 893 n. 23 [(D.C.Cir.1980)]. The district court can make an adjustment in the process of computing a lodestar or after computing a lodestar, so long as the court provides an explanation for each adjustment and does not adjust for the same factor twice.... The district court is in the best position to determine what fees are reasonable, and the court does not abuse its discretion by modifying the lodestar or other fee setting approach into a method more convenient on the facts of a particular case.
776 F.2d at 651 n. 3.
The Seventh Circuit in Ohio-Sealy suggested that, in certain cases, the use of a *903 more convenient approach to adjust for inflation, i.e. the use of current hourly rates, is within the district court's discretion. In at least one case, a district court has opted for this more convenient approach. Va. Academy of Clinical Psychologists v. Blue Shield, 543 F.Supp. 126 (E.D.Va.1982). In Va. Academy, the district court concluded that the use of current hourly rates was preferable to adjusting historical rates for inflation by using a multiplier. The district court reasoned:
The use of a multiplier, unless in some way indexed to the inflation rate, requires the court to engage in the sort of standardless discretion which should be avoided. Moreover, the latter method is merely an indirect means by which a court increases the historical rate to what is, in effect, the current rate. On the other hand, if the "lodestar" itself is based on present hourly rates, rather than historical rates, the harm resulting from delay in payment may be largely reduced or eliminated.... This Court, given the choice and absent contraindications, favors the direct approach of determining the current rates for a particular attorney. (Citations omitted.)
543 F.Supp. at 144 (emphasis in original).
Given the discretion conferred on a district court in Ohio-Sealy, the Court will follow the approach suggested in Ohio-Sealy and Va. Academy, i.e. to use current hourly rates as an adjustment of the lodestar for inflation and the time-value of money. In the present case, plaintiffs' attorneys have not been reimbursed since the start of this case in 1969. Given the inflation which occurred from 1969 to 1985 and the lost time-value of money, the Court believes that the current hourly rates of plaintiffs' attorneys should be used as an adjustment for inflation and the time-value of money.
Defendants do not dispute that the rates presented by plaintiffs' attorneys are their actual current rates. However, the Court will make one reduction in attorney Plotkin's current hourly rate. In his affidavit and in Original Exhibit A submitted with plaintiffs' proposed findings of facts, filed on October 28, 1985, Plotkin's hourly rate was $180 per hour. In the Revised Exhibit A, filed on February 21, 1986, Plotkin's hourly rate is $205 per hour. None of plaintiffs' other attorneys, with the exception of a $5 per hour increase for Fross from $155 to $160 per hour, have increased their hourly rates in Revised Exhibit A. Therefore, the Court will increase Plotkin's hourly rate only to $185 per hour from $180 per hour, as listed in Original Exhibit A.

B. Joint & Several Liability for Attorneys' Fees and Costs

Plaintiffs argue that they are entitled to the imposition of joint and several liability against all defendants, consenting and non-consenting, for attorneys' fees and costs. Plaintiffs concede that, with respect to each defendant which has consented to a final decree on hiring, joint liability for fees with respect to seeking relief on the merits should relate only to work undertaken for entry of the relevant consent decree. In other words, plaintiffs seek joint and several liability against nonconsenting defendants for fees and costs from 1969 to the present. Plaintiffs seek joint and several liability against consenting defendants up until the time each consenting defendant entered into a consent decree on hiring.
Defendant City of Chicago and the County defendants urge that no joint and several liability be imposed. Defendant City contends that joint and several liability for fees and costs would be unfair because it relieves plaintiffs of their burden to show that certain hours were related to certain defendants. The County defendants argue that fees and costs should be apportioned among all defendants by the number of employees each defendant controls.
In the Seventh Circuit Court of Appeals, joint and several liability for damages in a Section 1983 action may be based on one of two groundsconspiracy or indivisible injury. McKinnon v. City of Berwyn, 750 F.2d 1383, 1387 (7th Cir.1984). *904 Both grounds may well be present in the same case. Id. The court in McKinnon suggested that joint and several liability would be imposed on all defendants: "if they had conspired against him or if it just was not possible to say what portion of his injuries would have been avoided if a particular defendant had not participated in the wrongful conduct." Id.
While there are few cases which provide detailed analysis of joint and several liability in the area of attorneys' fees and costs, the cases appear to follow the standards for imposing joint and several liability for damages. See Dean v. Gladney, 621 F.2d 1331, 1340 (5th Cir.1980), cert. denied, 450 U.S. 983, 101 S.Ct. 1521, 67 L.Ed.2d 819 (1981); Coleman v. Frierson, 607 F.Supp. 1578, 1582 (N.D.Ill.1985); Strama v. Peterson, 561 F.Supp. 997, 1000 (N.D.Ill.1983). In Dean, Coleman, and Strama, the courts held that, where each defendant is liable for a discrete amount of damages (instead of joint and several liability for a single figure), joint and several liability for the entire fee award appears inappropriate. Dean, 621 F.2d at 1340; Coleman, 607 F.Supp. at 1582; Strama, 561 F.Supp. at 1000. Therefore, the above three cases rest their rejection of joint and several liability for fees and costs on the indivisible injury theory.
Dean, Coleman and Strama are inapposite where, as here, the court has already found a conspiracy to violate the plaintiffs' rights under Section 1983. In its 1979 order, the Court found that:
The stipulated admissions of the defendants, together with the other evidentiary matter before the court, establishes that there was a conspiracy among the defendants to deprive the plaintiffs of [their] rights....
Shakman, 481 F.Supp. at 1342. The Court elaborated on its above finding:
The stipulations and admissions of the other consenting and nonconsenting defendants are generally similar. They demonstrate that all defendants understand the nature of and participated in this "practice," which can be characterized in technical language as a "common plan."
481 F.Supp. at 1343. Finally, the Court held that: "in analyzing the constitutionality of the challenged practices, each defendant will be accountable for the hiring practices of all the defendants currently before the court." 481 F.Supp. at 1344.
In light of the above finding that a conspiracy among all defendants existed to deprive plaintiffs of their constitutional rights, the Court holds that the imposition of joint and several liability against all defendants for fees and costs is appropriate. The Court finds support for its holding in the approach applied in Riddell v. National Democratic Party, 545 F.Supp. 252 (S.D.Miss.1982), aff'd in part and remanded in part on other grounds, 712 F.2d 165 (5th Cir.1983). In Riddell, the district court held the two defendant political parties jointly and severally liable for attorneys' fees and costs. Riddell, 545 F.Supp. at 263.
Given the factual similarities between Riddell and Shakman, the Court will follow the Riddell approach, with one exception. In the interest of fairness, the Court will incorporate into the joint and several liability plaintiffs' concession regarding the liability limits for consenting defendants. Therefore, the nonconsenting defendants are jointly and severally liable for plaintiffs' attorneys' fees and costs from 1969 to the present. However, the consenting defendants are jointly and severally liable for plaintiffs' attorneys' fees and costs from 1969 up until each defendant entered into a consent decree. Based upon the new base amount or lodestar found herein, the plaintiffs are directed to file with the Court a revised Exhibit A which sets forth the amounts not chargeable to the consenting defendants by virtue of this Court's ruling.
Finally, the Court agrees with the County defendants that, after the imposition of joint and several liability for fees and costs, the fees and costs should be apportioned among all defendants by the number of employees each defendant controls.

*905 C. Calculation of Base Amount

Plaintiffs seek summary judgment only on their entitlement to attorneys' fees and costs, the reasonableness of their hourly rates and the ultimate base amount or lodestar. Plaintiffs do not seek at this time summary judgment regarding their entitlement to or the use of a multiplier to adjust the base amount for contingency, risk, novelty or good results.
In calculating the base amount, the Court has reduced the total amount of plaintiffs' attorneys' time by 1,267.3 hours. Appendix D shows the total number of hours disallowed by attorney. Appendix E shows the final calculation of the base amount after adjusting for the hours disallowed to each attorney. For the reasons stated above, the Court has applied the current hourly rates of plaintiffs' attorneys. The base amount is calculated by multiplying the total number of an attorney's hours by his current billing rate, and then adding up all of the base amounts for the individual attorneys. The final base amount calculation yields attorneys' fees in the amount of $883,504.75. Therefore, to the extent that the plaintiffs received most, but not all, of their fees requested in the base amount, plaintiffs' motion for summary judgment as to the base amount of attorneys' fees is granted in part and denied in part.
The Court grants plaintiffs' uncontested motion for summary judgment regarding costs in the amount of $18,139.82.

III. CONCLUSION
For the reasons stated above, plaintiffs' motion for summary judgment as to costs is granted in the amount of $18,139.82. Plaintiffs' motion for partial summary judgment regarding their attorneys' fees under Section 1988 is granted in the amount of $883,504.75. The Court also grants plaintiffs' motion for partial summary judgment regarding the imposition of joint and several liability against all defendants, subject to the apportionment and liability limits discussed, for plaintiffs' attorneys' fees and costs. The Court reserves ruling on what multiplier, if any, should be applied as an adjustment to the above base amount.
IT IS SO ORDERED.

 APPENDIX A
 Hours Disallowed For Robert Plotkin
Date Activity Hours
Oct. 1969 Legal research; prep. of
 complaint; preparation of
 papers re motion for
 preliminary injunction;
 meetings and telecons re
 same. 155.6
Nov. Same as for October plus
 work on preparation of
 briefs and papers on
 appeal. 118.9
Oct. 1970 Meetings, telecons and
 legal research re Court of
 Appeals' decision;
 evidence-gathering. 30.8
Feb. 1971 Legal research; meetings;
 telecons; investigation of
 facts. 55.0
March Attended pretrial
 conference; preparation for
 same; legal research;
 work re petition for
 certiorari; meetings;
 telecons. 38.0
April Meetings; telecons;
 investigation of facts. 7.3
May Meetings; telecons;
 investigation of facts. 20.0
June Legal research, meetings;
 telecons; investigation of
 facts. 74.0
July Attended court hearing;
 preparation for same;
 legal research; meetings;
 telecons; investigation of
 facts. 41.5
Aug. Negotiations and other
 work re settlement. 10.0
Sept. Negotiations and other
 work re settlement; misc.
 tasks. 25.3
Oct. Negotiations and other
 work re settlement. 61.3
Jan. 1972 Work re settlement. 40.0
 Time added (as per
 Affidavit) to cover
 unrecorded time prior to
 February of 1972. 75.0
Feb. 14-16 Court appearance;
 meetings with counsel;
 many telecons; preparation
 of documents, including
 preliminary injunction
 papers. 15.2

*906
Feb. 22-29 Many telecons; meetings;
 legal research; etc.all re
 settlement. 18.0
Mar. 7-30 Many telecons plaintiffs'
 counsel and defendants'
 counsel; meetings; work
 on papers and class
 hearing; etc. 19.0
July 28- Several telecons plaintiffs'
Aug. 15 counsel re court's 7/28/72
 decision; other work re
 same. 14.6
Aug. 16-17 Preparation for court
 appearance on 8/18
 (including preparation of
 papers and meetings with
 plaintiffs and plaintiffs'
 counsel). 8.6
Aug. 19-26 Legal research and other
 work re recusal motion.
 Several telecons and
 reviewed affidavits and
 other papers re Auld and
 Cohen 8.1
Aug. 31 Prepare affidavits in
 support of motion to
 recuse; several telecons. 9.8
Sept. 1 Preparation of affidavits in
 support of motion to
 recuse. 8.1
Sept. 10 Several telecons re court
 hearing tomorrow;
 preparation for same. 5.9
Sept. 11 Court appearance; work
 relating thereto
 afterwards. 4.4
Sept. 13 Telecons plaintiffs and
 plaintiffs' counsel, plus
 other workall reviewing
 pending matters. 1.2
Sept. 14 Meeting with plaintiffs'
 counsel re pending matters
 and other work relating
 thereto. 2.1
Sept. 19 Review of various pending
 matters; telecons re
 reassignment of case. 4.8
Sept. 21 Telecons plaintiffs and
 plaintiffs' counsel; work
 on various pending
 matters. 3.5
Sept. 26 Preparation of various
 motions, synopsis of status
 of case and related
 papersall for upcoming
 court hearing. 2 telecons
 defendants' counsel re
 same. 6.0
Sept. 29 Telecons plaintiffs and
 plaintiffs' counsel re
 motions against Democratic
 defendants; other work re
 same. 4.5
Oct. 24-29 Telecons plaintiffs and
 plaintiffs' counsel re
 discovery; other work re
 same. 8.9
Nov. 1-3 Several telecons re
 plaintiffs' motions re
 violations of Consent
 Judgment; other work re
 same. 6.2
Nov. 8 2 telecons plaintiffs'
 counsel; telecon plaintiff;
 telecon defendants' counsel
 and others; work re
 violations of Consent
 Judgment. 10.5
Nov. 9 General strategy meeting
 with plaintiffs and
 plaintiffs' counsel; several
 telecons re pending
 motions. 2.2
Nov. 15 Several telecons; reviewed
 documentsall re pending
 motions and petitions for
 enforcement of Consent
 Judgment; Court
 appearance re same. 4.1
Nov. 16-17 Several telecons re pending
 motions. .8
Dec. 11-31 Discussion with plaintiffs'
 counsel; etc. 2.0
Feb. 6- Work re Danaher matter;
Mar. 18, 1973 court appearances re same. 25.7
Mar. 19 Telecon plaintiffs' counsel
 re firing. .3
Mar. 20-23 Miscellaneous matters. 3.3
Mar. 23-31 Work re various matters. 3.5
Apr. 1-4 Several telecons plaintiffs'
 counsel re strategy for
 case; work on various
 pending matters. 2.6
Apr. 5-30 Miscellaneous matters. 2.7
May 26-31 Miscellaneous matters. 3.2
Jan. 24, 1975 Review of facts with
 witness re said matter. 4.0
Feb. 15, 1975- Review of various
May 12, 1982 documents; discussions
 with plaintiffs and
 plaintiffs' counsel; etc.
 (See par. 5 of Affidavit of
 R. Plotkin.) 75.0
Aug. 26, 1982 Reviewed documents re
 evidentiary hearing on 10/
 15. 2.1
Sept. 8 Prepared letter to
 defendants' counsel re
 witness for 10/15 hearing;
 reviewed file re said

*907
 hearing; legal research re
 said hearing. 2.6
Sept. 25 Telecon plaintiffs' counsel
 re defendants' motion for
 continuance of 10/15
 hearings; straightened out
 file. 1.3
Dec. 3 Telecon plaintiffs' counsel
 re hearing today; tell
 plaintiff; preparation of
 petition for fees. 2.8
Mar. 2, 1983 Meeting with plaintiffs'
 counsel re future plans. 1.0
Mar. 3 Legal research. 1.8
Mar. 4 Telecon plaintiffs' counsel
 re possible settlement. .3
Mar. 14 Telecon plaintiff. .2
May 16 2 telecons plaintiffs'
 counsel re negotiations
 with city; went to City
 Hall for meeting with city
 (which did not take place). 1.5
 ________
 Total 1,055.1
 Total hours claimed by
 Plotkin 1,788.5
 Total hours disallowed 1,055.1
 ________
 Total hours allowed for
 Plotkin 733.4
 ========
 APPENDIX B
 Time Disallowed For Work on
 Elrod v. Burns Matters,
 Including Amicus Brief
C. Richard Johnson:
3/28/73 Shanks mattercourt
 appearance and phone
 calls; discussion with
 Mr. Tucker re Elrod
 case. 2.75
8/7/73 General review;
 discussion with Mr.
 Tucker. .25
8/8/73 Review of Hatch Act
 case; work with Mr.
 Tucker's summer
 student. 1.25
9/1/73 Preparation of first
 draft of brief for
 amicus in Elrod v.
 Burns. 2.75
10/22/73 Preparing summary of
 enforcement proceedings
 for Mr. Tucker. .50
10/24/73 Work on letter re
 Burns argument to Mr.
 Tucker. .25
10/6/75 Work on Burns amicus
 brief. 1.50
10/7/75 Draft of research points
 for amicus brief in
 Burns v. Elrod;
 discussion with Mr.
 Tucker. 1.50
10/8/75 Work on research
 points. 1.00
11/7/75 Review of Supreme
 Court case. 1.00
11/18/75 Research re Supreme
 Court brief. 1.00
11/19/75 Work on Supreme Court
 brief. 1.00
11/25/75 Conversations with
 United States Attorney;
 preparation of letter. 1.00
11/26/75 Letter to Solicitor
 General. 2.00
12/1/75 Work on amicus brief. .50
12/5/75 General review. .50
12/10/75 Work on amicus brief. .50
12/11/75 Work on amicus brief. 1.00
12/12/75 Review of matters on
 amicus brief. 1.00
12/16/75 Historical review. .50
1/2/76 Work on amicus brief;
 preparation of Third
 Ward oral argument. 9.50
1/5/76 Oral argument on Third
 Ward matter; work on
 motion for leave to file
 amicus brief; research
 re constitutional
 convention. 3.50
1/6/76 Research re amicus
 brief in Burns; meeting
 with Messrs. Daley and
 Fitzpatrick on
 interrogatories. 4.00
1/7/76 Work on amicus brief. 8.25
1/8/76 Work on amicus brief. 5.25
1/9/76 Work on interrogatories;
 research re amicus
 brief. 1.75
1/13/76 Work on amicus brief. 3.25
1/14/76 Work on amicus brief. 2.50
1/15/76 Work on amicus brief. 7.50
1/16/76 Work on amicus brief. 6.50
1/19/76 Work on amicus brief. 8.75
1/20/76 Work on amicus brief. 7.00

*908
1/21/76 Work on amicus brief. 5.50
1/22/76 Work on amicus brief. 2.00
1/23/76 Review of filing of
 amicus brief. 1.00
1/28/76 Review of Respondent's
 brief in Elrod. 1.25
2/18/75 Work on motion for
 leave to participate in
 oral argument. .25
2/27/76 Status call; review of
 memoranda on Walker
 motion; review of
 status with Mr.
 Krasnow; review of
 amicus brief. 1.50
3/10/76 Work on requests to
 admit; work on motion
 on amici matter. 1.50
3/11/76 Meeting with Messrs.
 Fitzpatrick and Daley;
 phone calls re Cardilli;
 motion for leave to
 participate in oral
 argument before
 Supreme Court in
 Elrod. 2.50
3/19/76 Discussion with Ms. Hill
 on Elrod argument;
 work on motion. .50
3/25/76 Review of printing
 problem re Burns;
 discussion with Mr.
 Polikoff re hiring. .50
3/26/76 Review of possibility of
 employee suit; work on
 motion to Supreme
 Court in Elrod for
 leave to participate in
 oral argument. 2.00
4/14/76 Work on Elrod oral
 argument; review of
 requests and
 interrogatories. 2.50
4/25/76 Review suggested points
 on oral argument in
 Elrod; research re
 Cardilli attorneys' fees. 2.00
4/16/76 Arrangements to
 Washington, D.C. for
 Supreme Court
 argument. .50
4/19/76 Attendance at oral
 argument before
 Supreme Court in
 Elrod; review of cases
 involved in argument. 7.25
6/28/76 Review of Burns
 decision; phone calls. 1.25
6/29/76 Review of opinion in
 Elrod. 1.50
 _______
 TOTAL 123.00
 =======
Roger R. Fross:
9/5/73 Confer with J. Lockhart
 re firing and re amicus
 brief. 1.2
9/10/73 Review of amicus and
 legal research re same. 1.9
9/13/73 Review of amicus and
 legal research re same. 1.8
9/19/73 Review of amicus. 1.0
10/23/73 Burns argument. 1.7
10/29/73 Drafting interrogatories
 and amicus and reply. 2.3
10/29/75 Conference re
 proceeding on Elrod
 amicus. .9
1/19/76 Review amicus in
 Burns and Park
 District brief. 1.8
1/20/76 Conference with C.
 Richard Johnson re
 amicus brief and
 attention to employment
 statistics. .9
2/9/76 Reading Elrod brief. 2.1
4/19/76 Prepare for and attend
 Elrod argument in U.S.
 Supreme Court. 7.2
 _______
 TOTAL 22.8
 =======
Michael L. Shakman:
9/6/73 Work on Burns v.
 Elrod amicus brief. 2.1
9/18/73 Conference with Mr.
 Plotkin about Burns v.
 Elrod amicus brief. .8
9/19/73 Work on Burns v.
 Elrod amicus brief. 3.0
9/20/73 Work on Burns v.
 Elrod amicus brief and
 conference with Mr.
 Plotkin about it. .9
3/3/75 Review of Frost papers
 and petition for
 rehearing in Burns. .2
1/19/76 Review amicus brief in
 Burns v. Elrod. .9
1/21/76 Telephone with Mr.
 Johnson, Mr. Tucker. .3
2/17/76 Telephone with Mr.
 Johnson re Supreme
 Court argument in
 Burns v. Elrod. .1

*909
3/25/76 Telephone call and
 correspondence re
 Burns v. Elrod. .1
4/19/76 Attend Supreme Court
 argument in Burns v.
 Elrod and conferences
 with Mr. Johnson, Mr.
 Tucker. 7.0
6/28/76 Review of decision in
 Burns v. Elrod and
 telephone calls re 2.5
6/29/76 Review in Burns v.
 Elrod. .8
 -------
 TOTAL 18.7
 =======
 Total Hours Disallowed
 For Work on Elrod v.
 Burns Matters,
 Including Amicus Brief. 164.5
 APPENDIX C
 Time Disallowed For Michael L. Shakman's
 Participation As A Witness
2/4/71 Work on review of affidavit. 2.8
5/15/74 Preparation of affidavit. 1.0
12/23/74 Conference with Congressman
 Metcalfe, Mr. Johnson, and Mr.
 Krasnow concerning Third Ward
 contempt proceeding; draft
 affidavit. 1.5
7/28/77 Review affidavit in connection
 with motion for summary
 judgment and telephone call with
 Mr. Johnson. 1.9
8/4/77 Same. .6
8/8/77 Same. 1.0
3/22/82 Prepare possible questions for
 hearing testimony. 1.0
6/17/83 Preparation for hearing. 6.5
6/18/83 Preparation for hearing. 1.5
5/1/84 Telephone call with Mr. Fross
 concerning affidavits on City's
 emergency appeal. .4
5/2/84 Review draft affidavit in
 connection with City's emergency
 appeal; meeting with Mr. Fross,
 Mr. Graham, Mr. Lapesa
 concerning City hiring plan. 1.9
 -------
 TOTAL 20.1
 =======
 APPENDIX D
 Total Hours Disallowed By Attorney
Robert Plotkin 1,055.1
C. Richard Johnson 123.0
Michael L. Shakman 66.4
Roger R. Fross 22.8
 APPENDIX E
 Calculation of Base Amount
 Total Hours Allowed Current Total Base
 Attorney on Counts I-VI Hourly Rate Amount 
Mr. Johnson 2,824.25 $165.00 $466,001.25
 Mr. Gilford 12.5 105.00 1,312.50
 Ms. Majeske 30.0 80.00 2,400.00
Mr. Fross 1,199.0 $160.00 $191,840.00
Mr. Plotkin 733.4 $185.00 $150,347.00
Mr. Shakman 253.0 $155.00 $ 39,215.00
 Mr. Dellsy 337.6 50.00 16,880.00
 Mr. Beem 23.6 105.00 2,478.00
 Paralegals 19.3 45.00 868.50
Mr. Krasnow 97.3 $125.00 $ 12,162.50
 -----------
 TOTAL BASE AMOUNT $883,504.75
 ===========

NOTES
[1] The Petition and Bill of Costs seek attorneys' fees and costs from various defendant public employers against whom judgments have been entered under Counts I-VI of plaintiffs' amended complaint. The defendants named in the Petition and Bill of Costs are the City of Chicago and its Mayor, the Chicago Park District, the Cook County Sheriff, the Cook County Treasurer, and Clerk of the Circuit Court of Cook County, the Cook County Assessor, the President of the Cook County Board, the Cook County Board and the Forest Preserve District of Cook County.