Michael L. SHAKMAN and Paul M. Luri, et al., Plaintiffs,

v.

The DEMOCRATIC ORGANIZATION OF COOK COUNTY, et al., Defendants.

No. 69 C 2145.

United States District Court, N.D. Illinois, E.D.

Feb. 3, 1994.

Daniel C. Nestor, Asst. Corp. Counsel, Chicago, IL.

C. Richard Johnson, Chicago, IL.

Roger R. Fross, Lord, Bissell & Brook, Chicago, IL.

Jerome H. Torshen and Mark K. Schoenfield, Jerome H. Torshen, Ltd., Chicago, IL.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

■ This matter is before the court on plaintiffs' motion to reconsider Judge Bua's December 16, 1987 ruling on the proper calculation of a delay adjustment for the award of attorney's fees in this case. For the reasons stated below, the Motion to Modify the Delay Adjustment is granted. The appropriate interest rate for the delay adjustment sought here is the prime rate. This rate will be applied for all fees awarded in this case.

### Background

This case has a long history in this court. Plaintiffs Michael L. Shakman ("Shakman") and Paul M. Lurie, *et al.* brought this class action in 1969 against defendants Democratic Organization of Cook County, et al., challenging the patronage practices of the regular Democratic and Republican Party organizations in most of the Northern District of Illinois.[1] Judge Marovitz's dismissal of the case later that year for lack of standing was reversed in *Shakman v. Democratic Org. of Cook County,* 435 F.2d 267 (7th Cir.1970) ("Shakman I"). Following that reversal, plaintiffs entered into a consent decree with many of the Democratic and Republican defendants. In 1979, the court found that all defendants engaged in a conspiracy to deprive plaintiffs of their constitutional and civil rights to a free political and electoral process. *Shakman v. Democratic Org. of Cook County,* 481 F.Supp. 1315, 1342 (N.D.Ill. 1979) (Bua, J.) ("Shakman II"). Then, in 1987, the Seventh Circuit reversed the political hiring portion of the district court's decision, holding that plaintiff's asserted injuries lacked sufficient proximity to defendants' conduct to afford standing. *Shakman v. Democratic Org. of Cook County,* 829 F.2d 1387, 1396–99 (7th Cir.1987) ("Shakman III").[2]

Several years after the court's ruling in *Shakman II,* plaintiffs filed a petition seeking an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988 for work performed from 1969 through October 1984. In *Shakman v. Democratic Org. of Cook County,* 634 F.Supp. 895, 905 (N.D.Ill.1986) (Bua, J.) ("Shakman IV"), the court granted partial summary judgment in favor of the plaintiffs. After carefully reviewing the nature and quantity of the work performed by plaintiffs' attorneys, the court arrived at a base amount or "lodestar" of $883,504.75 for the fee award, but specifically reserved ruling on what "multiplier," if any, should be applied to this figure to account for *inter alia* the delay in payment of plaintiffs' attorneys' fees. *Id.*

The court addressed this issue one year later in *Shakman v. Democratic Org. of Cook*

---

1. This case was originally brought before Judge Marovitz. It was later transferred to Judge Bua. In late 1991, following Judge Bua's resignation, the case was transferred to this court.

2. This ruling affected only a small number of defendants as a vast majority declined to appeal the 1979 order. *Shakman v. Democratic Org. of Cook County,* 677 F.Supp. 933, 934 (N.D.Ill. 1987).

# 424

*County*, 677 F.Supp. 933 (N.D.Ill.1987) (Bua, J.) ("Shakman V"). In granting in part and denying in part, plaintiffs' motion for summary judgment, the court in *Shakman V* held that plaintiffs' fee award would be adjusted on two grounds. The court first held that an adjustment for delay in payment was appropriate to account for both inflation and the time value of money. *Shakman*, 677 F.Supp. at 942. Using the average annual yield on three-month Treasury bills, the court computed the accumulated present value of the historical fees due each of plaintiffs' attorneys as of November 30, 1987. *Id.* The court relied on the interest rate applicable to short term Treasury bills to calculate the present value of the fees owed plaintiffs' attorneys because it believed this rate "provide[d] a reasonably accurate measure of inflation and the time value of money." *Id.* The court also awarded a fee enhancement equal to one-third of the lodestar to account for the extraordinary nature of the case and the special success plaintiffs achieved. *Id.* at 944–48.

Soon after the court issued its opinion in *Shakman V*, the parties filed competing motions for reconsideration of the court's decision. The parties subsequently filed numerous additional motions relating to the court's award of attorney's fees in this case. Because the parties had agreed to stay further litigation of these issues in abeyance pending extensive settlement negotiations, many of these motions were still pending several years after they were first filed.[3] As a result of these motions, and in light of the simple fact that numerous issues relating to the award of attorneys' fees still needed to be

resolved, Judge Bua did not enter final judgment on plaintiffs' fee petition.

Over the last several years, the parties have resolved several of the outstanding fee petition disputes through settlement agreements with the City and the Park District. Still other issues were resolved by this court. On March 1, 1993, this court ruled on Defendant's Renewal of Motion for Reconsideration and Plaintiffs' Motion for Reconsideration of the Denial of a Risk Multiplier. The court also ruled on Plaintiffs' Motion to Modify Attorneys' Fees and Plaintiffs' Second Motion for Partial Summary Judgment. One motion—Plaintiff's Motion to Modify the Delay Adjustment—remains.[4]

## Discussion

■ As a threshold matter, the court observes that it has the authority to reconsider Judge Bua's December 17, 1987 ruling. Defendants argue that reconsideration is inappropriate here because under Fed.R.Civ.P. 59(e), a motion to alter or amend a judgment must be made within ten days of entry of the judgment, and under Fed.R.Civ.P. 60(b), relief from judgment is considered an extraordinary remedy and is granted only in the most exceptional of circumstances. (Def. Response at 2–3, citing *CKS Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir.1984). While the court agrees with defendants that courts generally have limited discretion to revisit final judgments once entered, in the instant case no judgment has been entered.[5] Thus, the strictures imposed by Fed.R.Civ.P. 59(e) and 60(b) simply do not apply.

3. As late as February 1993, the following motions were still pending: Renewal of Plaintiffs' Petitions for Attorneys' Fees, Plaintiff's Petition for Award of Attorneys' Fees with Respect to Litigation of Fee Claims, Plaintiffs' Supplement to Fee Petitions, Plaintiffs' Supplemental Memorandum on Risk Adjustment, Defendant's Renewal of Motion for Reconsideration of Order of December 16, 1987.

4. This motion was fully briefed by the parties on June 4, 1993.

5. "Judgment" for purposes of the Federal Rules of Civil Procedure is defined as "any order from

which an appeal lies." Fed.R.Civ.P. 54(a). When multiple claims or parties are involved as is the case here, the court may direct the entry of final judgment as to fewer than all of the claims or parties "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed.R.Civ.P. 54(b). Absent such express determination and direction for the entry of judgment, "the order ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." *Id.*

Nevertheless, the doctrine of law of the case cautions that the court should exercise its discretion to reconsider its prior rulings sparingly.[6] "The law of the case doctrine is a rule of practice, based on sound policy that, when an issue is once litigated and decided, that should be the end of the matter." *Evans v. City of Chicago*, 873 F.2d 1007, 1014 (7th Cir.1989) (quoting *Barrett v. Baylor*, 457 F.2d 119, 123 (7th Cir.1972). Generally, courts should reconsider prior decisions only in exceptional cases, such as where additional evidence has come to light, or the controlling law has changed, or where the prior decision was "clearly erroneous, and would work a substantial injustice." *Barrington Press, Inc. v. Morey*, 816 F.2d 341, 342–43 n. 2 (7th Cir.1987). Because the controlling law governing the proper interest rate to be applied for delay adjustments has changed since Judge Bua's ruling in December 1987, the court grants plaintiffs' motion to reconsider and modifies Judge Bua's ruling accordingly. *See generally Lenard v. Argento*, 808 F.2d 1242, 1246 (7th Cir.1987) (change of law governing allocation of attorneys' fees justified court's decision not to apply the doctrine of law of the case).

In awarding plaintiffs an upward adjustment to the lodestar for the delay in payment, Judge Bua recognized the importance of compensating plaintiffs' counsel for inflation and the time value of money. *Shakman*, 677 F.Supp. at 940. However, at the time Judge Bua issued his ruling, case law governing the appropriate interest rate to be applied in these cases was sparse. The leading Seventh Circuit case, *Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646 (7th Cir.1985), provided only limited guidance. In *Ohio–Sealy*, the court held that fee awards should be increased to compensate for inflation. *Id.* at 662. Although it specifically disapproved of the simple multiplier chosen

by the district court as not sufficiently precise, the court left the selection of an alternative approach to the lower court's discretion. *Id.* at 664.

Given this broad discretion and the relative dearth of relevant case law, Judge Bua rejected plaintiffs' suggested use of the prime rate,[7] and instead relied on the lower interest rate provided by short term Treasury bills in calculating the appropriate delay enhancement. Plaintiffs had argued that the prime rate was appropriate because it best approximated the cost that plaintiffs' attorneys would have incurred if forced to borrow the fees defendant owed them. *Shakman V*, at 941. According to the court, plaintiffs' cost of borrowing approach was unworkable because it would "lead to substantial and arbitrary differences in amounts received by attorneys based on the credit worthiness of their firm." [8] *Id.* Noting that a delay adjustment based on short term Treasury bill interest rates was consistent with the calculation of post-judgment interest under 28 U.S.C. § 1961, the court held that such an approach provided a reasonably accurate measure of inflation and the time value of money.

In the several years following Judge Bua's ruling, numerous courts, in particular the Seventh Circuit, have refined their views on the best approach for accounting for inflation and the time value of money when compensating claimants for delay in the receipt of payment. As the court explained in *Gorenstein Enterprises, Inc. v. Quality Care— USA, Inc.*, 874 F.2d 431 (7th Cir.1989), the appropriate rate to be applied when compensating for delay is the prime rate:

> For the future, we suggest that district judges use the prime rate for fixing prejudgment interest. . . . That is a readily ascertainable figure which provides a rea-

---

**6.** As Justice Holmes explained in *Messenger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912), the law of the case doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power."

**7.** Plaintiffs actually suggested that the court base its adjustment on the prime rate plus ¾. *Shakman V*, at 941.

**8.** As the court explained, under this approach, "an attorney at a law firm with a poor credit rating that could only borrow money at a cost of 3% or 4% over prime would be entitled to a greater adjustment for delay" than would an attorney at a firm with an excellent credit rating. *Id.*

sonable although rough estimate of the interest rate necessary to compensate plaintiffs not only for the loss of the use of their money but also for the risk of default. *Id.* at 436. The court specifically rejected any application of the low Treasury bills rate relied on to calculate postjudgment interest under 28 U.S.C. § 1961.

> This rate is too low, because there is no default risk with Treasury bills. Of course the courts are bound by that rate so far as postjudgment interest is concerned. But prejudgment interest is governed by federal common law, and the courts are free to adopt a more discriminating approach.

*Id.* at 437.

A few years later in *Matter of Oil Spill by the Amoco Cadiz,* 954 F.2d 1279, 1332 (7th Cir.1992), the court held what it had only suggested in *Gorenstein.* Unless the court specifically determines the actual borrowing rate for the defendant, courts should use the "prime rate—"that is, the rate banks charge for short-term unsecured loans to creditworthy customers." *Id.* As the court explained, the applicable rate is the market rate throughout the litigation—"when the defendant had the use of money that the court has decided belongs to the plaintiff—not the going rate at the end of the case." *Id.*

Although neither *Gorenstein* nor *Cadiz* specifically dealt with delay adjustments for the award of attorney's fees, as numerous courts have held, the reasoning behind the court's decisions is equally valid in this context as well. In *Alberti v. Klevenhagen,* 896 F.2d 927 (5th Cir.1990), for example, the Fifth Circuit adopted the prime rate as the appropriate basis for a delay adjustment of an attorney's fee award primarily on its reading of the Seventh Circuit's opinion in *Gorenstein:*

> We now concur with the Seventh Circuit that the appropriate rate of interest to be used in computing a delay in payment

adjustment is the cost of borrowing money, the prime rate. The figure used by the district court, the municipal bond rate, represents the amount the defendants saved by having the use of the money which should have been paid to plaintiffs' counsel.

*Id.* at 938 (citing *Gorenstein,* 874 F.2d at 436–37). *See also Lippo v. Mobil Oil Corp.,* 692 F.Supp. 826, 838–843 (N.D.Ill.1988); *Eirhart v. Libby–Owens–Ford Co.,* 774 F.Supp. 454, 456 (N.D.Ill.1991); *Blumenthal v. G–K–G Inc.,* 1993 WL 414686, 1993 U.S.Dist.Lexis 14569 (N.D.Ill. Oct. 13, 1993).

Defendants nevertheless argue that application of the prime rate here is inappropriate because this rate does not adequately reflect the reduced risk of default by government defendants. (Def. Brief at 7–8). Implicit in this argument is the assumption that Cook County defendants can borrow funds at a rate lower than the prime rate precisely because they are good credit risks. As noted above, the Seventh Circuit in *Cadiz* has anticipated this type of situation by instructing courts to rely on *either* the prime rate or the actual borrowing rate of the defendant(s) when this information is readily available. *Cadiz,* 954 F.2d at 1332. Defendants, however, do not submit any information suggesting that the County's actual borrowing rate is in fact lower than the prime rate. Plaintiffs, on the other hand, have submitted persuasive evidence suggesting that the County does in fact pay interest at the prime rate on its commercial borrowings.[9]

Thus, in light of this evidence regarding defendant's actual borrowing rates and the change in the federal common law governing delay adjustments, this court holds that all fees awarded in this case will be adjusted for delay based on the prime rate, not the short term Treasury bill rate relied on in *Shakman V.* Naturally, this adjustment will be based on plaintiffs' attorneys' historic hourly rates.[10] To take into account the normal

---

9. In support of its assertion, plaintiffs cite a Credit Agreement between the County and The First National Bank of Chicago which provides for interest rates of 100% of the prime rate for loans after the first 90 days. (Pl. Brief at 14, Attachment).

10. Defendants mistakenly argue that Judge Bua incorrectly adjusted the fee award twice in compensating plaintiffs' counsel for the delay in payment. (Def.'s Brief at 4–5). On the basis of this incorrect reading of Judge Bua's decision, defendants argue that the court should strike the court's 1.059 delay multiplier. Defendants' mo-

delay between the time legal services are performed and the time fees are actually collected, the court will follow Judge Shadur's lead in *Lippo,* 692 F.Supp. at 842, and "will view interest for each year's services as accruing from August 15 of that year (some 45 days after the year's mid-point) and will treat the interest rate applicable from that date as the weighted prime rate during that year." Finally, in recognition of the fact that the plaintiffs have already received payment of certain fees as part of settlement agreements with the City and the Park District, the court will reserve ruling on the total fee award due until plaintiffs submit additional information detailing the total amount of unpaid fees remaining.

### *Conclusion*

For the foregoing reasons, plaintiffs' motion to reconsider is granted. The court will rely on the prime rate in calculating the delay adjustment for all attorneys' fees awarded in this case. Parties are directed to discuss any and all remaining issues on this matter at the status hearing scheduled for February 11, 1994 at 9:30 a.m.

tion is denied as moot in light of this court's reconsideration of Judge Bua's December 16, 1987 ruling.